545 So.2d 846 (1989)
Todd Michael MENDYK, Appellant,
v.
STATE of Florida, Appellee.
No. 71507.
Supreme Court of Florida.
June 15, 1989.
Rehearing Denied July 28, 1989.
*847 James B. Gibson, Public Defender, and Michael S. Becker, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Ellen D. Phillips, Margene A. Roper and Kellie A. Nielan, Asst. Attys. Gen., Daytona Beach, for appellee.
BARKETT, Judge.
Todd Michael Mendyk appeals from the sentence of death imposed upon him in the court below. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction and sentence.
Late in the evening of April 8, 1987, appellant and a friend, Philip Frantz, drove to a convenience store so appellant could buy a hamburger. As they approached the store, appellant said to Frantz, "Let's grab this bitch," but Frantz claimed not to have taken him seriously. However, after entering the store, appellant grabbed the clerk, a woman named Lee Ann Larmon, led her out to their truck, forced her inside, and directed Frantz to drive away.
Taking Larmon to a secluded area, appellant led her from the truck and began removing her clothes. Appellant tied each of her legs to the legs of a sawhorse, and sexually tortured her by several means, including inserting a broom handle in her vagina. Appellant then untied Larmon, led her to a new location, gagged her and tied her with wire between two trees with her back arched. Returning to their car, appellant and Frantz then attempted to leave the scene.
While driving along the dirt road, however, appellant steered too far to one side and the truck became stuck. Several attempts to extricate it failed. Appellant then said he was going back to check on *848 the girl. After doing so, appellant returned to the truck and again attempted to free the truck from the roadside. When further attempts failed, appellant announced, "I'm going to have to kill her," and walked back toward the girl once more. Frantz asked why, but appellant did not answer. Upon his return, appellant told Frantz he had strangled the girl, cut down her body and dragged her into the bushes. Frantz then took all of the girl's clothes, a billy club which had also been used on the victim, and the broomstick, and threw them into the swamp. They then left the truck, returning with Frantz's mother and some tools to tow the truck out of the mud.
In the meantime, police had discovered the disappearance of Larmon. Conducting an aerial search, police observed the blue pickup truck in the woods. Ground units responded to the report, and found appellant, Frantz and Frantz's mother. Appellant and Frantz told the police they had been "mudslinging" in the woods with the truck and had become stuck. Searching the area, police found Larmon's body and arrested appellant and Frantz.
The grand jury indicted appellant for first-degree murder on April 16, 1987. The state subsequently filed an information additionally charging appellant with two counts of sexual battery and one of kidnapping. At trial, the state presented physical evidence tying appellant to the crime, including his fingerprints in the convenience store as well as evidence of Larmon's presence in appellant's truck. In addition, the state presented testimony from several police officers to whom appellant had confessed and the direct and comprehensive testimony of Frantz, who had agreed to testify against appellant as part of his plea bargain. Appellant was tried and the jury found him guilty on all counts.
In the penalty phase, the state introduced into evidence a list of pornographic book and magazine titles seized by police from appellant's residence. In addition to a "Satanic Bible," these titles generally covered themes involving slavery, bondage, sadomasochism, deviant sexual behavior, lesbianism, anal sex, the sexual use of enemas, and "telephone sex." Appellant did not present any evidence in the penalty phase, but requested a number of special jury instructions which were denied. The jury recommended death unanimously.
The trial court imposed the death sentence, concluding that the murder was committed during a kidnapping and sexual battery; that it was especially wicked, evil, atrocious, and cruel;[1] and that it was cold, calculated, and premeditated. The trial court found one mitigating factor, appellant's age of twenty-one years.
The court further imposed three consecutive life sentences on the life felonies, departing from the guidelines recommendation of seventeen to twenty-two years.
Appellant raises eight issues.
First, appellant contends that the trial court erred in not suppressing one of the confessions he made to Detective Decker. Specifically, appellant argues that Decker violated his fifth amendment right to counsel by initiating a conversation with him after appellant had invoked his right to counsel. See Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). We find it unnecessary to determine whether Decker or appellant "initiated" the conversation in question, since at least three other confessions to Decker and others were properly admitted at trial and are not challenged in this appeal. There is no question that these other confessions occurred after appellant initiated the contact with the police by sending for Detective Decker through a jail visitation request form. When several of Mendyk's confessions were properly before the jury, the admission of one more confession to the same act, even if erroneous, must be deemed harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129, 1138 (Fla. 1986).
Second, Mendyk argues that the trial court erred by refusing to quash the information charging sexual battery and *849 kidnapping and by consolidating the indictment for murder and the information. Mendyk contends that the state had no authority to file charges related to a matter already considered by a grand jury. This argument is without merit. King v. State, 390 So.2d 315 (Fla. 1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981). Nothing in Florida law purports to limit the state attorney's authority to file an information alleging crimes arising from a transaction that also has been the subject of a prior grand jury investigation or indictment. Indeed, Florida Rule of Criminal Procedure 3.151(b) (1987), states in pertinent part:
Two or more indictments or informations charging related offenses shall be consolidated for trial on a timely motion by a defendant or by the state. The procedure thereafter shall be the same as if the prosecution were under a single indictment or information.
The companion rule 3.151(a) states that offenses are related "if they are triable in the same court and are based on the same act or transaction or on two or more connected acts or transactions." There can be no doubt that the crimes of kidnapping and sexual battery, which took place some hours earlier than the murder, meet all the criteria described by this rule. We find no error as to this issue.
Third, Mendyk contends that he was entitled to additional peremptory challenges because of the alleged improper consolidation of the indictment and information. In view of our determination that the consolidation of the charges was proper, we find no merit to this contention. Mendyk received all challenges to which he was legally entitled.
Fourth, Mendyk challenges the trial court's decision to permit the penalty-phase jury to hear a list of titles from pornographic books and magazines seized at his home. We agree that this was error. The titles read to the jury had no relevance to any issue at trial. While these books and magazines were not shown to the jury, the reading of the titles unquestionably was inflammatory and of no probative value to any contested issue. Moreover, the potential confusion and unfair prejudice far outweighed any probative value, even if we assume this evidence had any relevance at all. Thus, we find that the trial court abused its discretion in permitting the introduction of this evidence. § 90.403, Fla. Stat. (1987). See People v. Hansen, 708 P.2d 468 (Colo.Ct.App. 1985). However, in light of all of the evidence presented, including appellant's confessions, we find this error harmless beyond a reasonable doubt. DiGuilio, 491 So.2d at 1138.
Fifth, Mendyk argues that the trial court erred in denying him certain jury instructions. We find proposed instruction number six[2] not to be an entirely correct statement of the law under Garcia v. State, 492 So.2d 360, 366 (Fla.), cert. denied, 479 U.S. 1022, 107 S.Ct. 680, 93 L.Ed.2d 730 (1986), and the trial court properly did not give it. The remaining instructions[3] essentially *850 deal with three subjects: (1) the determination of the aggravating factor of especially heinous, atrocious, and cruel; (2) the mitigating factor of a codefendant's sentence; and (3) the jury pardon power.
As to the first, the standard jury instructions properly and adequately cover the matters raised by appellant, and thus the trial court did not abuse its discretion in rejecting instructions beyond those contained in the standard jury instructions. As to the second, the standard jury instructions on mitigation tell the jury that they may consider any significant aspect of the defendant's life and character urged by the defense. Moreover, it is clear in this instance that appellant's codefendant was not equally culpable with appellant and did not actually participate in the murder itself. Thus, the trial court did not abuse its discretion in refusing to give this instruction. As to the third, there is no requirement that a jury be instructed on its pardon power.
Sixth, Mendyk contends that the facts of this case do not establish the aggravating factors of heinous, atrocious, and cruel, or cold, calculated, and premeditated. This argument is without merit. The murder described in gruesome detail in this record is a most heinous and calculated slaying. Prior to the murder, appellant kidnapped, repeatedly abused, sexually molested, bound and gagged, and literally toyed with the victim. At one point, the victim was stretched and tied to a sawhorse; at another, she was wired between two trees. It is clear from the statements of Frantz that Mendyk actually planned the murder of Larmon in advance and calculated upon that plan as he returned to the site where she was bound. This meets all the requirements of cold and calculated premeditation under our law. Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). It is equally clear that the torture and terror this victim must have endured for a lengthy period of time which was directly intended by Mendyk was certainly extreme, rendering this murder heinous, atrocious, and cruel. Magill v. State, 428 So.2d 649, 651 (Fla.), cert. denied, 464 U.S. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983).
Seventh, we reject Mendyk's contention that the departure sentence imposed on the life felonies in this instance was improper.
Eighth, appellant challenges Florida's death penalty statute on a variety of constitutional grounds, all of which have been repeatedly rejected by this Court and the United States Supreme Court. E.g., Stano v. State, 460 So.2d 890 (Fla. 1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985).
The judgment and sentences of the court below are affirmed in all respects.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
NOTES
[1] This finding substantially conforms to section 921.141(5)(h), Florida Statutes (1987), and thus is procedurally acceptable. Melendez v. State, 498 So.2d 1258, 1261 n. 2 (Fla. 1986).
[2] Mendyk asked for the following instruction:

Number 6. The state may not rely upon a single aspect of the offense to establish more than a single aggravating circumstance. Therefore, if you find that two or more of the aggravating circumstances are supported by a single aspect of the offense, you may only consider that as supporting a single aggravating circumstance.
[3] Appellant also was denied the following instructions:

Number 8. Acts committed after the death of the victim are not relevant in considering whether the homicide was "especially heinous, atrocious or cruel."
Number 16. In determining the appropriate sentence for defendant, you are instructed to consider the sentence of the codefendant.
Number 17. The death penalty is warranted only for the most aggravated and unmitigated of crimes. The law does not require that death be imposed in every conviction in which a particular set of facts occur. Thus, even though the factual circumstances may justify the sentence of death by electrocution, this does not prevent you from exercising your reasoned judgment and recommending life imprisonment without eligibility of parole.
Number 18. With regard to your decision to recommend life or death, the court hereby instructs that there is nothing which would suggest that the decision to afford an individual defendant mercy violates our constitution. You are empowered to decline to recommend the penalty of death even if you find one or more aggravating circumstances and no mitigating circumstance.
Number 19. You are never under a duty to impose death unless you conclude as a matter of your independent moral judgment that death is the appropriate penalty. This decision is solely in your discretion and not controlled by any rule of law. Each juror may decide to grant mercy to Todd Mendyk with or without a reason.