W. SHARP, Judge.
May appeals from his convictions and sentences for two counts of conspiracy to traffic in cocaine.[1] We agree with May that these two counts were improperly joined for trial and accordingly reverse and remand for further proceedings.
May was charged by amended information with two counts of conspiracy to traffic in cocaine. Count I alleged that May had conspired with Norman Allanson, Ed Wright, Glen Allanson, Nancy Naster, Lori Naster, and John Hoag to traffic in cocaine between February 1, 1989 and December 15, 1989. Count II alleged that May conspired with Ed Wright, Randy Forbes, Frank Paul a/k/a “Filthy Frank” to traffic in cocaine between November 19, 1989 and December 15, 1989.
At trial, the state introduced evidence of wiretaps on Ed Wright’s telephone. Some of the tapes involved May. After being arrested and charged with various drug crimes, Wright named May as being one of the “higher ups” in the drug business. At trial, Wright testified that between February and December 1989, May purchased from him or sold to him, more than five kilos of cocaine. Wright also acknowledged he had telephone conversations with May and Darryl Price, and that he was trying to get cocaine for Price from May. Wright admitted that he was required to testify truthfully at trial in order to obtain a reduced sentence.
The state also introduced evidence that May had been involved in smuggling cocaine into Louisiana by boat from Panama. The state’s witnesses — Norman Allanson, Nancy Naster and Debra Naster — testified that they were required to testify truthfully at trial as part of their plea agreements.
May testified on his own behalf and denied any involvement in drug dealing. May *1268 admitted that he had made the boat trip from the United States to Panama and then to Louisiana but testified that he was simply hired as a mate and that he had no knowledge that the boat contained drugs. The jury found May guilty of both counts of conspiracy to traffic in cocaine.
On appeal, May contends that the trial court erred in denying his motion to sever the two conspiracy counts for trial. May contends that the evidence established that count I and count II were separate and distinct conspiracies and were not based on the same or connected transactions. Thus joinder for trial was improper.
Florida Rule of Criminal Procedure 3.152(a)(1) provides that if two or more offenses are improperly charged in a single information, the defendant has a right to sever them for trial, upon timely motion. An offense is improperly charged in a single information when it fails to meet the requirement for joinder of offenses as set forth in Florida Rule of Criminal Procedure 3.150:
(a) Joinder of Offenses. Two or more offenses which are triable in the same court may be charged in the same indictment or information in a separate count for each offense, when the offenses, whether felonies or misdemeanors, or both, are based on the same act or transaction or on two or more connected acts or transactions.
In Crossley v. State, 596 So.2d 447 (Fla.1992), the Florida Supreme Court noted that consolidation of cases is justified by convenience and the preservation of the court’s valuable resources. But, practicality and efficiency should not outweigh a defendant’s right to a fair trial. In Cross-ley, the defendant had committed two robberies within a few hours of each other and only a few miles apart. However, the two episodes were entirely different. Thus the court held that the trial judge had erred in refusing to sever the trial of one robbery from the other robbery.
In Garcia v. State, 568 So.2d 896 (Fla.1990), the court held that the “connected acts or transactions” requirement of rule 3.150 means that the acts joined for trial must be considered in an episodic sense. The rules do not warrant joinder of criminal charges based on similar but separate episodes, separated in time, which are connected only by similar circumstances and the accused’s alleged guilt in both or all instances. Courts should consider the temporal and geographic association, the nature of the crimes, and the manner in which they were committed.
Applying these standards, the court held that the four counts of double murders in Garcia should have been severed for trial. Each pair of homicides tried in the case involved different victims at different dates and at different places stretching across a three-month period. The first pair of murders occurred about five weeks before the second and the second pair of murders occurred two months before the final murders. There was no temporal or geographic connection to link these crimes in an episodic sense. The only clear similarity was that they were similar types of offenses and allegedly they were committed by the same two people, either for money, drugs or both.
In this present case, the state charged May with two conspiracies. Count I dealt with importing cocaine from Panama to Louisiana to Florida in February through April 1989. Count II concerned obtaining cocaine from a supplier in South Florida during November and December of 1989. The two conspiracies were separated in time and geographic location and did not involve one continuous sequence of events.
The only similarities were that Ed Wright was named as a coconspirator in both, and both involved cocaine. However, Wright did not testify to any involvement in count I. As in Garcia, the fact that these were similar types of offenses and were allegedly committed by the same two people is not sufficient to allow the conspiracies to be joined for trial.
The danger of improper consolidation for trial of similar but unrelated charges is *1269 well illustrated by this case. Proof of the Panama to Florida importing conspiracy was relatively strong. Proof of the South Florida purchasing conspiracy was weak. While the evidence in the weaker case, standing alone, may have been insufficient to convince the jury of May’s guilt, beyond a reasonable doubt, the evidence of the other conspiracy had the effect of improperly bolstering the proof in the weaker case, and could have improperly tipped the scales. Accordingly, we conclude the charges should have been severed for trial, and failure to do so was an abuse of discretion.
We note briefly, to prevent its recurring on remand, that additional potentially reversible error occurred below during the prosecutor’s closing argument.[2] The record establishes that the prosecutor unduly stressed his witnesses were being pressured by himself as well as U.S. Marshals present in the audience to tell the truth. This came perilously close to improper vouching the credibility of the state’s witnesses.
Attempts to bolster a witness’ testimony by vouching for his credibility are improper. Jones v. State, 449 So.2d 313 (Fla. 5th DCA), rev. denied, 456 So.2d 1182 (Fla.1984); Blackburn v. State, 447 So.2d 424 (Fla. 5th DCA 1984); United States v. Dennis, 786 F.2d 1029 (11th Cir.1986), cert. denied, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987). Improper vouching occurs when the prosecution places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness’ testimony. United States v. Roberts, 618 F.2d 530 (9th Cir.1980), cert. denied, 452 U.S. 942, 101 S.Ct. 3088, 69 L.Ed.2d 957 (1981).
REVERSED and REMANDED.
DAUKSCH and GRIFFIN, JJ., concur.

. § 893.135, Fla.Stat. (1989).

. While questioning Norman Allanson, the prosecutor asked:
Q. And if you come in here and you don’t tell the truth do you have any idea what is going to happen to you as a result of me?
A. Yes.
You will inform the U.S. Attorney in New Orleans.
Q. And the U.S. Marshals are sitting right out here for me to tell; aren't they?
A. Yes. They are.
During closing argument, the prosecutor told the jury:
Now, who are we going to believe?
Let’s look at it this way:
Norman Allanson, Lori Naster, Ed Wright, all those people, they have no interest in their case whether he is found guilty or not. They all told you that. Their future is not depending on how this case comes out. Their future depends completely and entirely on their truthfulness.
If they are not truthful and I find out about it, Norman Allanson told you I am going to tell the Federal Government. There were marshals here. You can bet they will get told.