DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LAMONT DAVIS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-794

[December 17, 2014]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Gary L. Sweet, Judge; L.T. Case No. 562010CF000850A.

Gregory J. Morse of Morse & Morse, LLC, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Richard Valuntas, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Lamont Davis was convicted of felony murder and sentenced to life imprisonment for his role in the 2010 killing of a young mother in Port St. Lucie, Florida. At the same trial, he also was convicted of armed burglary with a firearm causing bodily harm or death, possession of a firearm by a felon, possession of ammunition by a felon, and high-speed or wanton fleeing.

Appellant now appeals his convictions, arguing the trial court erred by (1) admitting statements he made after he invoked his right to counsel; (2) admitting evidence obtained pursuant to a search warrant that used statements from the suppressed portion of his interview; (3) denying his motion to sever his high-speed fleeing count from the rest of the trial; and (4) admitting evidence relating to the 10 mm ammunition used during the crime. As set forth below, we find no reversible error and affirm his convictions.

**Background**

The victim was shot and killed during a robbery of her home in March 2010. Investigators found two bullet casings at the scene, including one from a 10 mm round. Investigators tracked the purchase of the 10 mm ammunition to a gun shop in Port St. Lucie, Florida. Using security footage from the shop, they identified Appellant and his co-defendant as the purchasers of the ammunition.

Eight days later, Appellant was arrested for high speed or wanton fleeing after he sped away from a routine traffic stop and crashed his car into an apartment building, following which he fled on foot before being apprehended. Items taken from the victim's home were found in Appellant's car.

While in pretrial custody, Appellant was interviewed by officers from the Port St. Lucie Police Department and an agent from the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). At the beginning of the interview, the ATF agent advised Appellant that the agent could not speak to him unless Appellant waived his rights. Appellant replied, "Well could I – Could I call my mother? I got a lawyer. Could I call them?" The agent spoke with Appellant for several more minutes before an officer from the Port St. Lucie Police administered Appellant *Miranda*[1] rights. Appellant agreed to speak with the officers and signed a waiver form. Appellant continued talking to the investigators before again asking, "Can't I call my lawyer?" Questioning nonetheless continued, and Appellant eventually told officers he was involved in the robbery and murder. Following the interrogation, detectives obtained a search warrant and executed a search of the residence of Appellant's girlfriend. Additional items removed from the victim's home were found in the girlfriend's residence.

Appellant filed a pretrial motion to suppress his statements made during the course of the police interview. The trial court granted the motion in part and denied it in part, suppressing everything Appellant said before he was read his *Miranda* rights and everything after he stated, "Can't I call my lawyer?" The motion was denied for everything between those points.

Appellant also moved to suppress evidence obtained from search warrants for his automobile and his girlfriend's residence and to sever his high speed fleeing charge from the other counts. The trial court denied these motions and ruled that the fleeing charge was "episodically related to the burglary because [Appellant's] automobile contained many of the

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

items reportedly stolen during the burglary when the murder occurred."

At trial, the portion of Appellant's statement that was not suppressed was entered into evidence. Among other testimony, Appellant's girlfriend stated that he had planned the robbery in her presence, brought stolen goods to her home, and asked his co-conspirator why he had shot the victim. The jury also heard tapes of phone calls between Appellant and his girlfriend in which he asked her to find a gun he had hidden. Appellant was convicted on all counts.

## Analysis

### 1. Admission of Statements

We apply a mixed standard of review when reviewing a motion to suppress. We must defer to the trial court's factual findings, but we review any legal conclusions de novo. *State v. E.W.*, 82 So. 3d 150, 151 (Fla. 4th DCA 2012).

Both the United States and Florida Constitutions protect criminal defendants from compelled self-incrimination. U.S. CONST. amend V; Art. I, § 9, Fla. Const. The United States Supreme Court has held that law enforcement officers are required to inform suspects of their right to have counsel present during custodial interrogations. *Miranda*, 384 U.S. at 444. "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 474. "After such warnings have been given, . . . the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement." *Id.* at 479.

In order for a suspect to invoke his right to counsel, he must make, "[a]t a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Moss v. State*, 60 So. 3d 540, 543 (Fla. 4th DCA 2011) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). However, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis v. United States*, 512 U.S. 452, 459 (1994) (emphasis in original); *see also State v. Owen*, 696 So. 2d 715 (Fla. 1997) (holding that Florida follows the rule in *Davis*, allowing questioning until a suspect clearly requests an attorney).

While courts have not always been clear on what constitutes an

3

"unequivocal invocation" of one's right to counsel, Appellant's initial request for an attorney in this case seems to qualify. Although he also references a desire to speak to his mother, Appellant's initial statement, "Well, could I – [c]ould I call my mother? I got a lawyer. Could I call them?" is a sufficiently clear expression of his desire for the assistance of an attorney.

"Under the well-settled principles of *Miranda*, once a suspect unequivocally invokes the right to counsel, all interrogation must cease." *McKenzie v. State*, 125 So. 3d 906, 909 (Fla. 4th DCA 2013). "If the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Moss*, 60 So. 3d at 544 (quoting *Smith v. Illinois*, 469 U.S. 91, 95 (1984)).

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). Since questioning never ceased, Appellant never reinitiated the conversation with the officers, and he did not appear to "knowingly and intelligently" waive the right he had invoked. Accordingly, there is insufficient evidence of a valid waiver.

Despite our agreement with Appellant that his *Miranda* rights were violated, such violations are subject to a harmless error analysis. *Caso v. State*, 524 So. 2d 422, 425 (Fla. 1988). The harmless error doctrine permits a conviction to stand where the State can "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). The "application of [the harmless error] test requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict." *DiGuilio*, 491 So. 2d at 1135.

In this case, the error in admitting Appellant's statements was harmless, as the improperly admitted statements were cumulative of other evidence presented at trial. Appellant informed the detectives that he was in the gun store from which the ammunition used in the burglary and murder had been purchased; however, the detectives initially had suspected that the ammunition had been purchased at this store *before* Appellant's interview, and the jury was shown a video still of Appellant purchasing ammunition in the store, heard testimony that he was identified as the man inside the store, and a store clerk identified Appellant in a photo lineup. Appellant admitted that he was a convicted felon; this information was stipulated to by the parties at trial and was easily discoverable. Appellant also admitted that he fled from the police and that he was the driver and sole occupant of the vehicle; this information was brought forward by the arresting officer during his testimony at trial.

Moreover, during the interview, Appellant stated that he heard the victim was killed in front of her child, information which a testifying police officer indicated had not been disclosed to the media. Without this information, the State nonetheless had sufficient evidence to convict Appellant, in light of the other evidence presented at trial, including testimony from his girlfriend that she observed Appellant planning the robbery and discussed the shooting of the victim with him; the discovery of the stolen items in Appellant's car and at his girlfriend's residence; and the video recording and testimony with respect to high speed car chase and the purchase of 10 mm ammunition. Additionally, Appellant informed the detectives that he merely was repeating "word on the street," and denied having any first-hand knowledge about the victim's murder. Appellant also told the police detectives that he had heard that the victim died in front of her daughter; evidence presented at trial reflected that the victim had two sons, no daughters.

"Where the evidence introduced in error was not the only evidence on the issue to which the improper evidence related, the introduction can be harmless." *Hojan v. State*, 3 So. 3d 1204, 1210 (Fla. 2009). That is the case here. As there was abundant evidence linking Appellant to the crimes charged, the trial court's error in not suppressing the entirety of Appellant's interview constituted harmless error.

## 2. Search Warrant

Some of the physical evidence used to convict Appellant was seized pursuant to a warrant to search the home of Appellant's girlfriend. Search warrants must be based on "probable cause supported by affidavit or

affidavits, naming or describing the person, place, or thing to be searched and particularly describing the property or thing to be seized." § 933.05, Fla. Stat (2010). The affidavit in support of this search warrant included information obtained from Appellant in contravention of his Constitutional rights.

> The inclusion of illegally obtained evidence in the supporting affidavit, where the affidavit contains other valid allegations sufficient to establish probable cause, does not invalidate a search warrant. The trial court's duty is to excise the invalid allegations and determine whether the independent and lawfully obtained information demonstrates probable cause.

*State v. Hunwick*, 434 So. 2d 1000, 1001 (Fla. 4th DCA 1983) (internal citations omitted). When Appellant's statements are removed from the affidavit, there are no facts to support probable cause to search his girlfriend's home.

However, like the admission of Appellant's statements, this is not the end of our analysis. "[T]he exclusionary rule will not be applied where it can be shown that, had the evidence in question not been obtained by the challenged police conduct, it 'ultimately or inevitably would have been discovered by lawful means.'" *Craig v. State*, 510 So. 2d 857, 862 (Fla. 1987) (quoting *Nix v. Williams*, 467 U.S. 431, 434 (1984)). For the inevitable discovery doctrine to apply, the State must establish that the evidence would have been discovered "by means of normal investigative measures that inevitably would have been set in motion as a matter of routine police procedure." *Id.* at 863.

"In making a case for inevitable discovery, the State must show 'that at the time of the constitutional violation an investigation was already under way.'" *Moody v. State*, 842 So. 2d 754, 759 (Fla. 2003) (quoting *Nix*, 467 U.S. at 457 (Stevens, J., concurring)). Here, investigators had already discovered sufficient evidence to create probable cause for a search of Appellant's girlfriend's residence prior to his interrogation. Officers linked the stolen item found in Appellant's car to the murder scene before talking to Appellant. Likewise, investigators obtained a recording of the phone call from Appellant to his girlfriend, asking her to find the gun he had hidden, two days before he was interrogated. This recording would give investigators reason to believe his girlfriend might know of or possess evidence relevant to their ongoing investigation. From this information, routine investigative measures would have inevitably discovered the evidence presented at trial, making that evidence admissible. Therefore, there was no error in admitting the evidence obtained from the search

warrant.

### 3. Severance of High Speed or Wanton Fleeing Count

"Because the decision to grant or deny a motion for severance rests within the sound discretion of the trial court, we review the denial of the motion for an abuse of discretion." *Williams v. State*, 40 So. 3d 89, 91 (Fla. 4th DCA 2010).

Two or more offenses can be charged in the same indictment or information "when the offenses . . . are based on the same act or transaction or on 2 or more connected acts or transactions." Fla. R. Crim. P. 3.150(a).

> The "connected acts or transactions" requirement set forth in rule 3.150(a) requires that the charges joined for trial must be considered in an episodic sense. . . . [T]he crimes in question must be linked in some significant way. . . . [C]rimes linked in an episodic sense generally fall into two categories: first, those that occurred during a crime "spree" interrupted by no significant period of respite; and second, situations in which one crime is causally related to the other, even though there may have been a significant lapse of time between crimes.

*Shermer v. State*, 935 So. 2d 74, 76 (Fla. 4th DCA 2006) (internal quotations and citations omitted). The trial court found that Appellant's flight from officers eight days after the murder was episodically related to the prior crimes. We agree.

Appellant's flight from the traffic stop reasonably could be construed as an attempt to prevent the officers from discovering the stolen items in his car that would link him to the murder scene. The commission of one crime in an attempt to avoid conviction for another is a sufficient connection to link the two crimes. *See Sule v. State*, 968 So. 2d 99 (Fla. 4th DCA 2007) (holding the trial court did not abuse its discretion by denying a motion to sever counts where defendant, charged with murder and arson, solicited other inmates to murder his neighbor to hinder the prosecution of the initial crimes). Therefore, the trial court did not abuse its discretion in this case by denying Appellant's motion to sever the high speed or wanton fleeing count.

### 4. Evidence of 10 mm Ammunition

Finally, Appellant challenges the admission of evidence pertaining to the 10 mm ammunition. "A trial court's decision to admit evidence is reviewed using an abuse of discretion standard of review, as limited by the rules of evidence." *Lopez v. State*, 97 So. 3d 301, 304 (Fla. 4th DCA 2012). The admission of evidence relating to the ammunition was clearly relevant to the trial, as Appellant was charged with possession of ammunition by a felon. Furthermore, the ammunition was relevant as bullets of this caliber were used in the murder. *See Holloway v. State*, 114 So. 3d 296 (Fla. 4th DCA 2013). Finally, the record does not support Appellant's argument on appeal that "the state's evidence that the ammunition was unique or rare was woefully inadequate." Therefore, the trial court did not abuse its discretion in admitting this evidence.

## Conclusion

In sum, we hold that any error in the admission of Appellant's statements and their use in applying for a search warrant was not reversible error. No other reversible error exists to allow his convictions to be reversed. Therefore, we affirm Appellant's convictions on all counts.

*Affirmed.*

CIKLIN and CONNER, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

8