DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JACQUELINE LUONGO,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-3770

[August 28, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dennis D. Bailey, Judge; L.T. Case No. 14012153CF10A.

Carey Haughwout, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Lindsay A. Warner, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Jacqueline Luongo was charged with first-degree murder for the death of Patricia Viveiros. While in jail awaiting trial, Appellant was also charged with tampering with a witness and solicitation to murder that witness. These charges were joined for trial and Appellant was found guilty as charged on all three counts. Appellant now raises seven issues on appeal. We write only to address Appellant's argument that the trial court erred in joining the charges and in denying Appellant's motion to sever the murder charge from the tampering and solicitation charges. On that argument and all others raised, we affirm.

**Background**

While conducting a welfare check on Viveiros at her apartment, the police discovered her body in a zipped garment bag inside the bedroom closet. Viveiros had been handcuffed. There was white duct tape covering her entire face and a plastic bag over her head. The autopsy revealed that the cause of death was asphyxiation caused by the tape covering the victim's mouth and nose. There were no signs of forced entry into the

apartment or of a struggle inside the apartment.

### A. The testimony of Maria Calderon

According to the trial testimony of Appellant's former live-in girlfriend, Maria Calderon, nine days before police found Viveiros's body, Calderon and Appellant met at a bar. During their conversation, Appellant told Calderon that she was living with Viveiros, but that Viveiros was recently arrested and in jail. Appellant then asked Calderon if she was interested in helping her kill Viveiros because Viveiros had money. Calderon told Appellant that she was not interested. Appellant then mentioned to Calderon that Calderon could disguise herself as Viveiros so that they could forge Viveiros's checks.

Several days later, Appellant admitted to Calderon that Viveiros was not in jail but was actually dead and that her body was in Viveiros's closet. When Calderon asked how Viveiros died, Appellant stated that she came home and found a "big Spanish guy" choking Viveiros. Appellant stated that this man hit her, forced her to duct tape Viveiros, and took pictures of her while doing so. Appellant stated that she believed this man was likely a hitman sent to kill Viveiros to prevent her from testifying in an unrelated case. Following this conversation, while Appellant was out getting ice, Calderon left because she wanted "nothing to do with that."

Two days later, Appellant and Calderon met again at a hotel. Appellant told Calderon that she had been forging Viveiros's checks and that she planned to leave the country. Calderon testified that she began to get suspicious that Appellant was trying to frame her for the murder when she realized that she had likely left her fingerprints in Viveiros's apartment during two overnight stays. Later that night, when Appellant was asleep, Calderon left the room and flagged down a police officer to tell him about Appellant's confession to her. Appellant was taken into custody and once the body was found, charged with first-degree murder.

### B. The testimony of Nicole Okrezik and Detective Munson

While in jail, Appellant met Nicole Okrezik. At trial, Okrezik testified that Appellant admitted to her that she murdered Viveiros. Appellant told Okrezik that Viveiros was upset because Appellant had gone out with Calderon and did not return until the following morning. While arguing, Appellant attempted to quiet Viveiros by putting tape over her mouth. When Viveiros tried to pull the tape off, Appellant handcuffed her, placed duct tape around her entire face, and covered her head with a plastic bag. Once Viveiros was dead, Appellant wiped down the body with alcohol,

placed her in a garment bag, and left her in the closet.

Appellant told Okrezik that she felt Calderon had betrayed her and "needed to be eliminated." Appellant became persistent and repeatedly stated that there would be no case against her if Calderon was gone. Appellant asked Okrezik if she knew someone that could get rid of Calderon. Fearing that Appellant would successfully find someone else, Okrezik replied that she might know someone who would do it. Okrezik then informed law enforcement of Appellant's plan. The police decided that Detective Munson would pose as a hitman for hire. Okrezik convinced Appellant that Munson was an ex-boyfriend involved in organized crime and was willing to kill Calderon for money.

In a recorded phone conversation with Munson, Appellant named Calderon as the person that needed to be "taken care of." Munson asked Appellant whether she wanted Calderon beat up or killed. Initially, Appellant replied that she wanted Calderon beat up. However, during the conversation, Appellant changed her mind and said she wanted Calderon "[t]otally gone."

Six days later, Munson informed Appellant that Calderon was dead. After seeing fabricated pictures of Calderon appearing dead, Appellant told Munson that she was "definitely happy" and "[o]ne more satisfied customer." Appellant was then charged with solicitation to commit murder and tampering with a witness.

*C. Trial Court Proceedings*

The State filed a pretrial motion seeking to join the murder count with the solicitation and tampering counts at trial. The State argued that joining the counts in one trial was proper because Appellant tried to have Calderon killed in order to prevent her from testifying against her at the murder trial. Defense counsel submitted a response, arguing that the evidence from the solicitation and tampering charges was "highly inflammatory" and would become a "feature of the [murder] trial." Defense counsel also argued that joining the charges would improperly bolster the State's witness and deprive Appellant of her right to a fair trial. The trial court granted the State's motion and ordered the charges to be tried together. Defense counsel then filed a motion to sever the offenses. The court denied the motion, finding that the "initial consolidation was rightful."

The trial lasted sixteen days. Calderon and Okrezik provided the above-noted testimony regarding the murder (with Calderon declaring that

Appellant killed Viveiros for her money) and solicitation to commit murder. Detective Munson testified regarding his conversations with Appellant about conducting "the hit" on Calderon. The recorded phone conversations between Appellant and Munson were also played for the jury at trial.

The jury found Appellant guilty as charged. She was sentenced to life in prison for the murder conviction, and to a consecutive thirty-year term for the tampering and solicitation convictions.

## Analysis

We review a trial court's decision to consolidate or sever charges for an abuse of discretion. *Estrich v. State*, 995 So. 2d 613, 618 (Fla. 4th DCA 2008) (citing *Smithers v. State*, 826 So. 2d 916, 922-23 (Fla. 2002)).

Florida Rule of Criminal Procedure 3.150(a) controls the joinder of offenses. It provides that multiple offenses are triable together when they "are based on the same act or transaction or on 2 or more connected acts or transactions." Fla. R. Crim. P. 3.150(a).

Florida Rule of Criminal Procedure 3.152(a)(2) controls the severance of offenses. It provides:

> (2) In case 2 or more charges of related offenses are joined in a single indictment or information, the court nevertheless shall grant a severance of charges on motion of the state or of a defendant:
>
> > (A) before trial on a showing that the severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense . . . .

Fla. R. Crim. P. 3.152(a)(2).

"The 'connected acts or transactions' requirement set forth in rule 3.150(a) requires that the charges joined for trial must be considered in an episodic sense." *Shermer v. State*, 935 So. 2d 74, 76 (Fla. 4th DCA 2006) (quoting *Garcia v. State*, 568 So. 2d 896, 899 (Fla. 1990)). "Furthermore, there must be a 'meaningful relationship' between or among the charges before they may be tried together." *Id.* (quoting *Ellis v. State*, 622 So. 2d 991, 999 (Fla. 1993)). "Thus, 'the crimes in question must be linked in some significant way.'" *Id.* (quoting *Ellis*, 622 So. 2d at 1000).

In most cases, crimes that are significantly linked fall within two categories: 1) those "occur[ing] during a crime 'spree' interrupted by no significant period of respite"; and 2) situations where, even with a significant period of respite, one crime is causally related to the other. *Id.* (citing *Ellis*, 622 So. 2d at 1000).

Crimes are not significantly linked when they are separate and distinct with no causal link other than the fact that the accused is the same person. *See Wright v. State*, 586 So. 2d 1024, 1030 (Fla. 1991) ("The episode involving the battery charges was wholly distinct from the episode involving murder and burglary. Each episode involved different offenses, different victims, different times and dates, different places, and different circumstances."); *see also Ellis*, 622 So. 2d at 999 (remanding because, although the crimes were similar, each crime was freestanding and distinct; there was no causal link in the commission of the crimes; and the crimes were interrupted by several months); *Dupree v. State*, 705 So. 2d 90, 96-97 (Fla. 4th DCA 1998) (two charges relating to the sale of drugs were "separate and distinct" transactions; "did not arise from one continuous sequence of events"; and "[t]he fact that both sales were to the same undercover officer" and "occurred within a week's time" was "hardly enough" to connect them).

Here, the trial court found that Appellant's tampering with a witness and solicitation to murder that same witness were causally related to the murder charge, as the witness at issue was cooperating with police in the murder investigation. We agree.

Our holding comports with our decision in *Sule v. State*, 968 So. 2d 99 (Fla. 4th DCA 2007). There, the defendant was awaiting trial for first-degree murder, arson, and burglary. While in jail, he approached two other inmates and asked them to help him set up the victim's neighbor as the murderer and then kill the neighbor to make it look like a suicide. *Id.* at 101-02. One of the inmates brought this to the attention of detectives and began working with them. *Id.* at 102. The defendant was eventually charged with solicitation to commit murder, solicitation to tamper with evidence, and solicitation to commit burglary of a dwelling. *Id.* After the trial court granted the State's motion to consolidate the charges, the defendant unsuccessfully moved to sever his first-degree murder, arson, and burglary charges from the solicitation charges. *Id.* We affirmed, holding that there was a causal link between all the crimes charged. *Id.* at 103. Our opinion explained the rationale for denial of Sule's motion:

> The murder of Domato and solicitation to murder Heredia and
> the related charges were connected in the episodic sense. The

5

murder of Domato resulted in the plot to burglarize and kill Heredia. Evidence of the Domato murder would be admissible in the trial of the solicitation. Likewise, evidence of the solicitation to murder Heredia and pin the blame for the Domato murder on him would be admissible in the Domato murder trial. *See, e.g., Heath v. State*, 648 So. 2d 660, 664 (Fla. 1994) ("Evidence that a suspected person in any manner endeavors to evade a threatened prosecution by any *ex post facto* indication of a desire to evade prosecution is admissible against the accused where the relevance of such evidence is based on consciousness of guilt inferred from such actions."); *Jenkins v. State*, 697 So. 2d 228, 229 (Fla. 4th DCA 1997) ("a defendant's direct threat against a witness is relevant and may be admitted into evidence because it could be indicative of the defendant's guilt of the underlying offense"). The trial court did not err in denying the motion for severance.

*Id.* at 104-05.

Similarly, the trial court in the instant case properly found that all three charges were causally related and not separate and distinct. The solicitation and tampering occurred during an ongoing murder investigation. *See Sule*, 968 So. 2d at 102. The charges were causally related because the murder charge induced the solicitation and tampering charges. *See id.* at 104; *Fotopoulos v. State*, 608 So. 2d 784, 790 (Fla. 1992) (finding that joinder was proper because one crime was used to induce the other). The State argued that commission of solicitation and tampering was done in an attempt to prevent a key witness from testifying to avoid a murder conviction. *See Davis v. State*, 153 So. 3d 360, 367-78 (Fla. 4th DCA 2014) (citing *Sule*) ("The commission of one crime in an attempt to avoid conviction for another is a sufficient connection to link the two crimes."). Moreover, the solicitation and tampering charges could be reasonably construed as demonstrating Appellant's consciousness of guilt for Viveiros's murder. *See Jenkins*, 697 So. 2d at 229.

## Conclusion

The trial court did not err by allowing the three charges to be tried together. All three charges were causally related and were not separate and distinct. We thus affirm the trial court's consolidation of the charges and the denial of severance, and further affirm (without discussion) all the other issues raised on appeal.

*Affirmed.*

6

DAMOORGIAN, J., and CROOM, JANET, Associate Judge, concur.

\*      \*      \*

*Not final until disposition of timely filed motion for rehearing.*