404 So.2d 206 (1981)
Jeffrey Lance TIERNEY, Appellant,
v.
STATE of Florida, Appellee.
No. 80-958.
District Court of Appeal of Florida, Second District.
October 7, 1981.
Raymond E. LaPorte, Tampa, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and James S. Purdy, Asst. Atty. Gen., Tampa, for appellee.
HOBSON, Acting Chief Judge.
Appellant Jeffrey Lance Tierney appeals his conviction and sentence for burglary of a dwelling, grand theft of personal property and unauthorized temporary use of a motor vehicle. In particular, appellant argues that the trial court erred in failing to grant his motion to suppress incriminating statements made by appellant while in custody.
At trial, Deputy Sides of the Pasco County Sheriff's Department testified that he and Deputy Coast arrested appellant in an abandoned house. The deputies handcuffed *207 appellant and read him Miranda[1] warnings from a card. Deputy Sides testified that, at that time, appellant stated that he understood his rights, that he did not want to talk to the deputy and that he wanted an attorney. Appellant told Deputy Sides the name of his attorney and Deputy Sides attempted to contact him.
Deputy Sides further testified before the jury that, some one and one-half hours after appellant's arrest, he arrived at the sheriff's office booking area and observed appellant handcuffed to a wall-ring. Deputy Sides proceeded past appellant and sat down at a nearby desk to type up a probable cause affidavit in order to book appellant's codefendant, Tavernier. Deputy Sides stated that appellant was extremely upset at the time. After typing for a few minutes, Deputy Sides swiveled around in his desk chair, facing appellant, and stated:
`I'm going to level with you. I'm going to tell you exactly what the other defendant, Mr. Tavernier, had told me.' This is what I did.
* * * * * *
Well, I turned around in my chair, scooted back to my typewriter, started typing. The defendant said to me, `I hit the place, but I'm not taking the rap by myself.' He said, `Mr. Tavernier drove that car just as much as I drove it. Mr. Tavernier took just as many articles out of that home as I took. I'm not taking the rap for this thing by myself.' This is, in essence, what Mr. Tierney stated to me.
Appellant argues that the admission of the inculpatory statement, made over his objection, violated the principles of the Miranda decision as well as the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.
The issue before us is whether the remarks made by Deputy Sides to appellant constitute "custodial interrogation" within the meaning of Miranda and whether appellant's inculpatory statements were made in response to "custodial interrogation." The United States Supreme Court addressed this issue in Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The Court discussed "interrogation" in the context of the Miranda opinion and stated:
`Interrogation,' as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself.
We conclude that the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, to term `interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the Miranda safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.
100 S.Ct. at 1689, 1690.
Clearly, appellant was not subjected to express questioning by Deputy Sides. The issue is whether Deputy Sides should have known that his remarks were reasonably likely to elicit an incriminating response. The case of Toliver v. Gathright, 501 *208 F. Supp. 148 (E.D.Va. 1980), is directly on point. The District Court stated:
Confronting an accused with incriminating evidence is a common and traditional method of prompting a recalcitrant suspect to confess. That it is also frequently an effective tactic may be judged from the volume of cases involving confessions so induced. As the trial judge noted, and as Weaver surely knew, it is a `common reaction' for an accused to respond to incriminating evidence by speaking. Faced with evidence indicating that the police already believe him to be guilty, an accused may conclude that he has nothing to lose by making a statement, or may fear that silence will be taken as an admission of guilt.
In applying the Innis test to the facts of the instant case, we have concluded that Deputy Sides, regardless of his underlying intent, should have known that his remarks to appellant were reasonably likely to elicit an incriminating response. Thus, the admission of the inculpatory statements were in violation of the principles of Miranda and Innis. We hereby reverse the judgment of conviction entered against appellant and remand this cause for a new trial.
REVERSED and REMANDED.
OTT and CAMPBELL, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).