422 So.2d 53 (1982)
The STATE of Florida, Appellant,
v.
Andres ECHEVARRIA, Appellee.
No. 81-2603.
District Court of Appeal of Florida, Third District.
October 26, 1982.
Rehearing Denied December 8, 1982.
Jim Smith, Atty. Gen. and Calvin L. Fox, Asst. Atty. Gen., for appellant.
*54 William A. Clay and Paul Morris, Miami, for appellee.
Before NESBITT, BASKIN and FERGUSON, JJ.
BASKIN, Judge.
We affirm the trial court's suppression of statements made by defendant Echevarria in response to questioning by an officer attempting to complete a police report. Echevarria had asked to speak to an attorney prior to the time he was taken to the police station. When the officer asked "Who hit you?" Echevarria, who spoke little English, stated that the man he killed had hit him.
In our view, Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) govern. Defendant's response was the "intentional result of interrogation," Barfield v. State, 402 So.2d 377, 381 (Fla. 1981), and may not be deemed a voluntary statement merely because the officer intended to complete a report. In Innis, the court expressed the concept that it is the perception of the suspect rather than the intent of the police upon which we must focus. 446 U.S. at 301, 100 S.Ct. at 1689-90.
Affirmed.
FERGUSON, Judge (concurring).
The single witness called to testify at the hearing on the motion to suppress the statement was Sergeant Genevieve Broussard. Her testimony in pertinent part is as follows:
A. I became involved with Mr. Echevarria upon responding to a call ... where a description of a man, Mr. Echevarria was given to me by Mrs. Echevarria, his ex-wife.
Q. Why did you go to the scene that you just mentioned?
A. I was dispatched there in reference to a man down, and upon arriving, that a man had been shot.
Q. Did you find out the name of that man?
A. I did. It was Evilio Perez.
Q. What did you do with the information that you got from his ex-wife?
A. I put it out on the police radio and initiated a BOLO for his arrest.
Q. Did you come in contact with him later?
A. I did.
* * * * * *
A... . We knocked on Mr. Echevarria's apartment door, and he responded to the door.
Q. What happened after he responded to the door?
A. Detective Martinez advised him in Spanish why we were there, and he also advised him of his Miranda rights at this point.
Q. After the defendant was read his Miranda rights, did he make a statement to the police officers there?
A. He said he didn't want to talk to anybody without an attorney.
Q. Did you respect that wish and also the other police officers, as to not talking to him about this case without at least, contacting an attorney first?
A. That's correct.
Q. Did you speak to him after that about this case at that location?
A. At that location, no I did not.
Q. What did you do with the defendant, then?
A. When we got to the defendant, we took him to Miami Police Department headquarters, and he was taken up to homicide for routine booking-type procedures, then I took him down to prisoner processing.
* * * * * *
Q. You mentioned you asked him if he had been injured?
A. That's correct.
Q. What did he reply?
A. Yes, he did.
Q. What did he say?
A. He stated to me that he had been hit one time, and he pointed to his left eye above his brow.

*55 Q. What was following that, if anything?
A. And then I asked him who hit him and he stated that the man he killed, and then he put his head down, covered his eyes and started to cry.

Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), holds that after a suspect had invoked his right to counsel all interrogation must cease. Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), is instructive as to the standard to be applied in determining whether there has been a custodial interrogation:
[Any] practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. 446 U.S. at 301, 100 S.Ct. at 1690.
Unlike the facts in Barfield v. State, 402 So.2d 377 (Fla. 1981), which is relied upon by the state, here there is not a close question. Despite her good intentions Sergeant Broussard should have expected, based on what she already knew, that the questions asked the defendant after he had requested an attorney were reasonably likely to elicit an incriminating response.