497 So.2d 1268 (1986)
Keith A. JONES, Appellant,
v.
The STATE of Florida, Appellee.
No. 86-67.
District Court of Appeal of Florida, Third District.
November 4, 1986.
Rehearing Denied December 16, 1986.
*1269 Bennett H. Brummer, Public Defender, Howard Sohn, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., Debora J. Turner, Asst. Atty. Gen., for appellee.
Before NESBITT, BASKIN and DANIEL S. PEARSON, JJ.
PER CURIAM.
On January 26, 1985, at approximately 6:00 p.m., two males kidnapped Franklin Morrison, robbed him, and fled in his car. At approximately 9:00 p.m., driving the same car, two males robbed, shot, and killed Merlene Daugherty. On January 28, 1985, police stopped Morrison's car and arrested its occupants for grand theft of the Morrison car. The car's occupants included defendant seventeen-year-old Keith Jones and a codefendant who is not a party to this appeal. On the morning of January 29, 1985, presented with a photographic lineup, Morrison identified the codefendant and Jones as the individuals who had robbed him. Later that day, the codefendant named Jones as a participant in the robbery and murder of Merlene Daugherty. The police then informed Jones that they had information implicating him in the Daugherty homicide. After receiving his Miranda rights, Jones initialed the standard constitutional rights warning form, indicating that he was unwilling to speak to police in the absence of an attorney. At that point, the police arrested Jones for the Morrison armed robbery and kidnapping.
Jones requested permission to telephone his mother. While Jones was speaking to his mother, Detective Jackson picked up an extension phone and identified himself as a police officer; Detective Meeks listened to the conversation on another extension. During the phone call, Detective Jackson informed both Jones and his mother of the charges and evidence against Jones. When the call ended, Jones signed a waiver of his right to counsel and confessed his involvement in the Daugherty murder.
Jones was charged with first-degree murder, two counts of armed robbery, two counts of unlawful possession of a firearm while engaged in a criminal offense, armed kidnapping, and aggravated battery. He filed a pretrial motion to suppress his confession on the ground that it had been obtained in response to custodial interrogation after he had invoked his right to counsel. The state disagreed, asserting that Jones had initiated contact with police, thereby waiving his right to counsel. The trial court denied the motion to suppress. In addition, the court denied Jones' pretrial motion for severance of offenses and for separate trials based on improper joinder of the two criminal episodes.
At trial, testimony indicated that Jones was in the car when the codefendant shot Daugherty. During the charge conference, defense counsel asked the court to instruct the jury as to second-degree felony-murder, a lesser included offense of first-degree murder, in accordance with the holding in State v. Lowery, 419 So.2d 621 (Fla. 1982), which permits the jury to return a verdict of second-degree felony-murder even though the defendant was not present at the scene of the crime. The court denied the request, and instead, instructed the jury that the defendant had to be present to be found guilty of second-degree felony-murder. At the conclusion of the trial, the jury found Jones guilty as to all counts except aggravated battery. Following the trial court's entry of adjudications and sentences, Jones instituted this appeal.
We find merit in only three of the points raised on appeal: 1) whether the trial court erred in refusing to suppress Jones' confession, 2) whether the trial court committed error in its second-degree felony-murder instruction, and 3) whether the trial court erred in denying Jones' pretrial motion to sever the offenses and to conduct separate trials of the charges resulting from the two criminal episodes. We answer all three questions in the affirmative.
Addressing the admissibility of Jones' confession, we direct our attention to pertinent case law. In Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 *1270 L.Ed.2d 694, 726 (1966), the Supreme Court ruled that the prohibition against compelled self-incrimination requires police to advise arrestees of their rights to remain silent and to obtain or be furnished counsel. The Court held that when an accused indicates that he wishes to consult with counsel, interrogation must cease until an attorney is present. Miranda, 384 U.S. at 474, 86 S.Ct. at 1627, 16 L.Ed.2d at 723.
The Court reiterated and expanded its views in Edwards v. Arizona, 451 U.S. 477, 485, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378, 386 (1981). Recognizing that a defendant may choose to waive his rights and respond to police interrogation, the Court established safeguards to insure that post-Miranda waivers are voluntary. The Court provided that the state may not prove a waiver merely by introducing a defendant's response to police-initiated interrogation; instead, the state must demonstrate that the defendant abandoned an earlier request for counsel and resumed or initiated communication with police of his own volition.
Miranda procedural safeguards apply to custodial interrogation whether it appears as direct questioning or in the form of its functional equivalent. Innis v. Rhode Island, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The term "interrogation" under Miranda "refers not only to express questions, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 301, 100 S.Ct. at 1689-90, 64 L.Ed.2d at 308.
Applying the principles enunciated in Edwards, Innis, and Miranda to the record before us, we find that the police initiated contact with Jones after he had invoked his right to counsel, and that his confession to the Daugherty homicide logically resulted from their intimidating message, ostensibly directed to his mother. During defense counsel's cross-examination, Detective Jackson admitted that he informed Mrs. Jones of the charges and evidence against her son while Jones listened on the extension.
[DEFENSE ATTORNEY] So, there is [sic] four people on the telephone now; Keith Jones, Mrs. Jones, his mother, you and Detective Meeks; is that correct?
A. That's correct.
Q. In that conversation you advised Mrs. Jones that you wanted to take a statement from Keith, didn't you?
A. I told her that  I told her that we wanted to speak to him, yes.
Q. That you wanted to take a statement from him?
A. That we wanted to speak to him.
Q. You never told Keith Jones' mother that you wanted to take a statement from him?
A. In those words, possibly, yes.
Q. That you wanted to talk to him?
A. Yes.
Q. You told her that the evidence was against him?
A. Yes.
Q. That he'd been implicated in the murder by [codefendant]?
A. Yes.
Q. You told her what the charges were?
A. Yes.
Q. This is with Keith on the telephone?
A. Yes.
Detective Meeks testified similarly:
[DEFENSE ATTORNEY] According to your testimony, that was Detective Gary Jackson that volunteered or suggested to Keith [Jones] that he get on the phone and talk to his mother?
A. Yes.
Q. Jackson initiated the contact then, not Keith Jones?
A. Yes.
Q. Is that correct?
A. Yes.
Q. That's when Jackson identified himself as a police officer?
A. Yes.
Q. Now, when he spoke to Keith  When he spoke to the mother on the *1271 phone, Keith was still on the extension, wasn't he?
A. Yes, I believe so.
Q. Isn't it a fact that Keith was on the extension for the entire time that Jackson was talking to Keith's mother?
A. I think he was, yes.
Q. You think he was. Wasn't he?
A. I think he was, yes.
Q. Jackson said that Keith was arrested for the kidnapping; correct?
A. Yes.
Q. Possibly be arrested for the murder?
A. Yes.
... .
Q. Also as far as what evidence they had against Keith, you told this to the mother, right?
A. Yes.
Q. You were telling it to Keith because he was on the phone, too?
A. Yes.
Q. Did you consider this questioning of Keith Jones?
A. Did I consider it?
Q. Yeah.
A. No.
Q. Did you tell Keith Jones' mother that Keith had asked for a lawyer?
A. I didn't talk to the mother.
Q. Did Jackson tell her that?
A. I can't recall whether he did or not.
In condemning the type of police conduct employed here, Innis focused on the perception of the accused rather than the subjective intent of the police officer. It is unlikely that Jones recognized the sophisticated technique by which police sought to elicit his confession. Furthermore, Detective Jackson, having failed to tell Mrs. Jones that her son had requested and was entitled to an attorney, could reasonably expect Mrs. Jones to instruct her teenaged son to cooperate with police. Jackson's remarks to Mrs. Jones were designed to have the same coercive effect on Jones as if they had been spoken directly to him, and as a consequence, fall within the Innis condemnation.
The minimal safeguards provided by Edwards, Innis, and Miranda are, of course, afforded to defendants by Florida courts: see Smith v. State, 492 So.2d 1063 (Fla. 1986); State v. Madruga-Jiminez, 485 So.2d 462 (Fla. 3d DCA), review denied, 492 So.2d 1335 (Fla. 1986); State v. Echevarria, 422 So.2d 53 (Fla. 3d DCA 1982), review denied, 434 So.2d 889 (Fla. 1983); Tierney v. State, 404 So.2d 206 (Fla. 2d DCA 1981); Lornitis v. State, 394 So.2d 455 (Fla. 1st DCA 1981); see also State v. Garcia, 422 So.2d 926 (Fla. 3d DCA 1982); Singleton v. State, 344 So.2d 911 (Fla. 3d DCA 1977). These authorities mandate a holding that the trial court committed reversible error in denying Jones' pretrial motion to suppress his confession and in permitting its introduction at trial.
In the second point raised, Jones challenges the trial court's instruction to the jury. We find error on this point as well. The trial court should have modified the standard jury instruction on second-degree felony-murder to comport with the mandate of Lowery.[1] Under Lowery, the jury may return a verdict of second-degree felony-murder even though the defendant was not present at the scene of the crime. Because the trial court's erroneous instruction required the jury to find that Jones was present at the scene of the crime before it could return a verdict of the lesser crime of second-degree murder, the use of the erroneous instruction curtailed the possibility of a lesser verdict.
We also find error in the trial court's denial of Jones' motion for severance of offenses and for separate trials of *1272 the charges which arose from the two criminal episodes. The supreme court held in State v. Williams, 453 So.2d 824, 825 (Fla. 1984) (citing Paul v. State, 365 So.2d 1063, 1065 (Fla. 1st DCA 1979) (Smith, J., dissenting)), "that consolidation [of offenses] is improper when `based on similar but separate episodes, separated in time, which are "connected" only by similar circumstances and the accused's alleged guilt in both and all instances.' 365 So.2d at 1065-66, adopted 385 So.2d 1371 at 1372." The supreme court's interpretation of Florida Rule of Criminal Procedure 3.150(a) in both Williams and Paul mandates the severance of offenses and separate trials where, as here, the only connection between the two criminal episodes was the use of a stolen car and the accused's alleged participation. See McMullen v. State, 405 So.2d 479 (Fla. 3d DCA 1981); Macklin v. State, 395 So.2d 1219 (Fla. 3d DCA 1981); cf. Green v. State, 408 So.2d 1086 (Fla. 4th DCA 1982) (severance not required when two criminal acts take place in same area within seconds of each other).
For these reasons, we reverse the judgments and remand for further proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] Although the standard jury instructions on second-degree felony-murder in existence at the time of the trial did not reflect the Lowery holding, the supreme court decided Lowery prior to the trial, and it was available to the trial court. The supreme court subsequently amended the standard jury instruction in accordance with the Lowery holding. The Florida Bar re Standard Jury Instructions Criminal Cases, 477 So.2d 985 (Fla. 1985).