WENTWORTH, Senior Judge.
Larry Anthony Crossley appeals the judgment and sentences against him on one count of armed kidnapping and two counts of armed robbery. He raises numerous issues on appeal, only two of which merit discussion. We affirm, finding no abuse of discretion under Rule 3.150(a), Fla.R. Crim.P., in the denial of motions to sever the robbery count unrelated to the kidnapping, and to suppress pretrial and trial identifications by two witnesses.
The suppression issues require consideration of (1) whether the police employed an unnecessarily suggestive procedure and if so, (2) considering all the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable mis-identification. Grant v. State, 390 So.2d 341 (Fla.1980), cert. denied, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981). The United States Supreme Court has set out the standard for determining the reliability of an identification on the totality of the circumstances, even though the procedure might have been suggestive. In Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Court identified five factors relating to reliability: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness’ prior description; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.
In this case, neither of the identifications gave rise to a substantial likelihood of misidentification. In the first instance, Jacqueline Jones, the victim of the second robbery, testified that shortly after she gave the police a description of the robber the police came by the store and told her they had a possible suspect. They indicated there had been a chase, and took Ms. Jones to the intersection where appellant wrecked the car he had been driving. The police had her wait in the car for about half an hour, and then decided that it would be preferable for her to view the suspect at the police station. They took her there and put her in a room with a two-way mirror. Ms. Jones testified that in the adjoining room was a man she identified as the robber. She told the police that the suspect “looked just like” the man who had robbed her. She indicated that he looked like he had been in a fight. He had grass in his hair, was dirty, and looked disheveled but not hurt. She testified that the suspect was wearing the same gray cut off shorts that he wore at the robbery.
*803 Although the procedure used with Ms. Jones may have been suggestive,[1] there was little likelihood of misidentification, in what was essentially a “show-up” view shortly after the robbery. The witness had an excellent opportunity to view appellant while he was standing two feet in front of her during the robbery, with sufficient light to view him. Based upon the details of her description of the robber, her attention was shown to have been good. Her description was accurate, and her level of certainty was high. She indicated that it took only a minute to identify appellant as the robber at the police station. The short time span between the crime and the confrontation also supports the reliability of her identification. Under all the circumstances, the trial court properly denied the motion to suppress Ms. Jones’ identification.
Unlike the procedure used in Ms. Jones’ identification, the procedure used in the identification by the first victim, Betty White, was not suggestive. Detective Watson showed Ms. White six photographs. Ms. White testified that the detective did not try to influence her and did not tell her that the suspect was already in custody. She testified that she took her time and looked “real close” at the pictures. Although appellant appeared to have a swollen eye in the picture, Ms. White did not indicate that she chose the picture because of the swollen eye. To the contrary, she indicated that she chose the picture because the bottom part of appellant’s face reminded her of the assailant’s lips under his sunglasses. Moreover, the trial court indicated that Ms. White had to look at the picture rather closely to see if the eye was closed after defense counsel asked her about it.
Appellant’s second contention is that the trial court erred in denying his motion to sever the armed kidnapping and armed robbery of Betty White from the armed robbery of cashier Jacqueline Jones at the Banner Food Store. We find that the trial court did not abuse its discretion in denying appellant’s motion to sever.
The material facts are that on July 22, 1989, at approximately 3:00 p.m., Betty White, a waitress at the Clock Restaurant, finished work and went to the car that her brother had lent her. As she was counting her tips in the car before she left the parking lot, a black man she described as dressed in a blue short-sleeve shirt, gray shorts, a cap and sunglasses appeared at her car window with a gun. He told her to slide over and kidnapped her in the vehicle. About 4:00 p.m., he pulled behind Moncrief Liquor Store and told her to get out. He then fled with the car and her purse.
About 6:15 p.m. on the same day Jacqueline Jones was working as a cashier at Banner Food Store. She saw a black man, whom she described as wearing a blue short-sleeve jacket, gray shorts, a cap, sunglasses and sneakers, bring a six-pack of beer to the cash register. She testified that after she rang up the beer, the robber pulled a gun from his shirt and held it next to her stomach. She stepped back and let the robber take the money from the register.
At 8:30 p.m., an officer spotted a vehicle fitting the description of the car reported taken in the first robbery. A chase ensued which ended with the suspect crashing the car into a fence. The suspect was taken to the police station where he was identified by Ms. Jones. Two or three days later, Ms. White identified him by a photo identification as the man who kidnapped and robbed her.
Officer Senterfitt, one of the investigating officers in the case, testified that the liquor store where the kidnapper dropped off Ms. White was approximately 3.4 miles from the Clock Restaurant and 1.8 miles from the Banner Food Store. He indicated that all three points were within a five square mile area.
Appellant argues that the present case is factually similar to Jones v. State, 497 So.2d 1268 (Fla. 3rd DCA 1986), rev. denied, 506 So.2d 1043 (Fla.1987), cert. denied, 484 U.S. 823, 108 S.Ct. 87, 98 L.Ed.2d 48 (1987), in which the appellate court re *804 versed the defendant’s judgment and sentences based on the trial court’s failure to sever the kidnapping and robbery of one victim at 6:00 p.m. and robbery and murder of two victims three hours later, where the only connection between two incidents was the use of a car. Although we recognize the factual similarities in the Jones case, we do not find the decision conclusive on the question of whether the trial court in the present ease' abused its discretion.
We note also that Livingston v. State, 565 So.2d 1288 (Fla.1988), on which the appellee relies, is not directly on point. In Livingston, the court affirmed a ruling against severance of charges of (1) burglary and grand theft in connection with a break-in of a house at noon, and (2) first-degree murder, attempted first-degree murder, armed robbery, and displaying a weapon during a robbery of a convenience store/gas station robbery occurring about 8:00 p.m. the same day. The Supreme Court held that the trial court did not abuse its discretion in consolidating dissimilar crimes where they were connected in an episodic sense because they occurred only hours apart in the same small town, and the pistol stolen in the burglary became the instrument for effecting the armed robbery and murder.
In determining whether the trial court abused its discretion in denying severance in the present case, we must determine whether or not the offenses are “connected acts or transactions” within the meaning of the rule. We find that the offenses here are sufficiently close temporarily, geographically, and factually. The crimes were separated by a period of only 2 hours and 45 minutes, and occurred only two or three miles apart. Both involved armed robbery commencing on the property of a commercial establishment. In both, the robber approached female victims and pulled a gun on them. In both, the victims identified the robber as a black man wearing a cap, dark sunglasses, a blue shirt or jacket, and gray shorts. Based on the temporal, geographic, and factual closeness of the offenses, the trial court did not abuse its discretion in denying appellant’s motion for severance.
Accordingly, we affirm appellant’s judgment and sentences.
SMITH and WIGGINTON, JJ„ concur.

. The State at oral argument made a concession to that effect.