659 So.2d 1224 (1995)
STATE of Florida, Appellant,
v.
James Edward KOLTAY, Appellee.
No. 95-00494.
District Court of Appeal of Florida, Second District.
August 24, 1995.
Robert A. Butterworth, Attorney General, Tallahassee, and Patricia J. Hakes and Patricia E. Davenport, Assistant Attorneys General, Tampa, for appellant.
*1225 Joseph F. McDermott, St. Petersburg Beach, for appellee.
DANAHY, Acting Chief Judge.
James Edward Koltay was charged with the capital crime of sexual battery upon his two young stepchildren. In this appeal the state asks this court to reverse an order of the trial court which suppressed as evidence an incriminating statement Koltay made to police officers. Koltay made the statement in response to a question posed by the arresting officer before the officer apprised him of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We reverse because the question posed by the officer was not reasonably likely to elicit an incriminating response. Accordingly, the officer's question did not constitute "interrogation or its functional equivalent" so as to trigger the requirement of Miranda warnings. Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); Lowe v. State, 650 So.2d 969 (Fla. 1994).
At the hearing on Koltay's motion to suppress the incriminating statement the arresting officer, Detective Good, was the only witness. He testified that, armed with probable cause, he and his partner sought to locate and arrest Koltay. The parole and probation office informed the detective that Koltay might be at the Pinellas Emergency Mental Health Services. This facility is generally referred to in the area as PEMHS. When the detective and his partner went to PEMHS they did not know why Koltay was there nor whether he was there through a voluntary commitment or by court order. The detective subsequently learned that Koltay had left PEMHS. The probation office then provided the detectives with Koltay's previous work address, an auto body shop, where they ultimately located him. They arrested him, informed him of the capital sexual battery charges, handcuffed him, and put him in the front seat of their cruiser for transport to the sheriff's office. Detective Good informed Koltay that they did not wish to discuss the case with him until they were in the interview room at the sheriff's office and that, once there, the detective would apprise him of his Miranda rights prior to questioning him.
While en route small talk commenced with a discussion about a "far-out ... big, red ... female's wig" that another man at the body shop had been wearing. Koltay volunteered that his own pony tail was woven to his scalp. Then the conversation turned to Koltay's stay at PEMHS and the detective asked him why he had left PEMHS. Koltay did not understand what the detective meant by "PEMHS" so the detective repeated his question using the acronym "PEMHS" again. Koltay still did not seem to understand so Detective Good's partner said: "The mental place that you were in." At this point Koltay became irate, banged his knees into the dashboard of the detective's car, and stated to the effect that "I'm not crazy just because I f____d a little girl." This is the statement that Koltay successfully sought to have suppressed. The trial court based its decision on the lack of Miranda warnings.
The purpose of Miranda warnings is to prevent government officials from using "the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment." Arizona v. Mauro, 481 U.S. 520, 529-30, 107 S.Ct. 1931, 1937, 95 L.Ed.2d 458 (1987). The threshold question is whether the questioning constitutes "custodial interrogation." There is no dispute here that Koltay was in custody at the time he made the statement. In deciding whether the police engaged in conduct that is:
express [interrogation] or its functional equivalent, and in determining whether police are engaging in conduct that they "`should know [is] reasonably likely to elicit an incriminating response,'" the focus is "`primarily upon the perceptions of the suspect, rather than the intent of the police.'"
Lowe, 650 So.2d at 973 (citing Arizona v. Mauro, 481 U.S. at 526-27, 107 S.Ct. at 1935, quoting Rhode Island v. Innis, 446 U.S. at 301, 100 S.Ct. at 1690). In Arizona v. Mauro, *1226 the police yielded to the insistent demands of the suspect's wife that she be allowed to talk to her husband. The police expected that the suspect would incriminate himself,[1] they recorded the conversation with his wife, he did incriminate himself, and these statements were used to convict him. The United States Supreme Court looked at the situation focusing on the perceptions of the suspect and doubted that the suspect, being told by the police that his wife would be allowed to speak to him, would feel that he was being coerced to incriminate himself. The United States Supreme Court found that the Arizona court had misconstrued Rhode Island v. Innis and the statements should not have been suppressed. See also State v. Sawyer, 561 So.2d 278 (Fla. 2d DCA 1990) (coercion need not be physical but can be psychological and include threats, promises of leniency, suggestions of the details of the crime or implied promises of benefits).
As directed by Lowe and Arizona v. Mauro, we focus on the perceptions of the suspect. The tactic of "[c]onfronting an accused with incriminating evidence [against him] is a common and traditional method of prompting a recalcitrant suspect to confess." Tierney v. State, 404 So.2d 206, 208 (Fla. 2d DCA 1981) (citing Toliver v. Gathright, 501 F. Supp. 148 (E.D.Va. 1980)). This tactic is quite effective as shown by the large number of confessions thus elicited. Faced with a statement, indicating that the police already believe him to be guilty, the suspect may determine he has nothing to lose by making a statement or may believe his silence will condemn him. Toliver v. Gathright. In Tierney, the officer had told the suspect what a co-suspect had said to incriminate him and the suspect confessed saying that he wasn't going to take the rap himself. This court in Tierney ordered the statement suppressed.
In the case before us Koltay knew what the charges were and knew that the detective was going to discuss these charges with him when they got to the sheriff's office if Koltay consented after having his rights read to him there. Detective Good's question to Koltay simply asked why he left PEMHS. We do not think that such a question parallels the improper tactic of confronting a suspect with incriminating evidence against him condemned in Tierney or approximates the psychological coercion criticized in Sawyer. We doubt that asking a suspect why he left an emergency shelter would make him feel that he was being forced to incriminate himself. We conclude that, under these circumstances, Detective Good's question was not reasonably likely to elicit an incriminating response. Because that is so, the incriminating response that resulted should not have been suppressed.
Reversed and remanded for further proceedings.
FRANK and QUINCE, JJ., concur.
NOTES
[1] Id. at 528, 107 S.Ct. at 1936.