PER CURIAM.
The defendant, Manuel Mesa, appeals from his convictions and sentences. We affirm.
In April 1993, Manuel Mesa, the defendant below, and two others, Roberto Tapia and Rolando Carado, were taken into custody by the Hialeah Police Department in connection with the robbery and murder of an elderly man. After being advised of his Miranda rights, the defendant invoked his right to counsel and requested an opportunity to speak with his attorney before answering any further questions. The defendant was placed in a holding cell. Meanwhile, the police contacted the defendant’s brother, a police informant, and advised him that the defendant had requested counsel. The informant was allowed to speak to the defendant, and shortly thereafter, the defendant confessed and gave a formal statement.[1]
About ten minutes later, while the defendant was being transported to a holding cell by the same detective who had taken his formal statement, the defendant asked to speak with his “partner,” Tapia. While the detective completed some paperwork, he allowed the defendant and Tapia to see each other. They sat at a table within earshot of the detective. Tapia told the defendant that he thought that he had “messed up.” The defendant replied, “Don’t worry about it. I helped out. I confessed. I said everything that I need to say and [the detective] is going to help us out, and we are going to get through this.” The defendant reassured Ta-pia by telling him that .the police were going to go after the “main guys” who committed the crimes and that the police would help *53 them if they cooperated completely by disclosing all the information they had regarding the crimes.
At the conclusion of the defendant’s conversation with Tapia and at the defendant’s urging, the detective reassured him that if he cooperated completely, he would help him. Then, the detective took the defendant downstairs for processing. While in the elevator, the defendant again asked for assurances that the police were going to get the “main guys.” The detective asked the defendant whether one of the “main guys” was present during the commission of the crimes, and the defendant confirmed that one of them had been there. Next, while the defendant was waiting to be processed, the detective told the defendant that he would have to give some more fingerprints and explained that had the defendant’s fingerprints not been on the victim’s phone, the police would never have made a case against him. The defendant responded by saying that he had been “stupid” to touch the telephone. The detective then asked him why he had touched the phone, and he answered that he had moved it while searching the apartment.[2]
Subsequently, the defendant, together with two co-defendants, Tapia and Carrido, were charged by a three-count indictment with first-degree murder, armed burglary of a dwelling, and armed robbery. In January 1994, Carrido entered a plea of guilty to reduced charges. On February 14th, the defendant’s joint trial with Tapia began, and shortly thereafter, a mistrial was declared. Four days later, Tapia entered a plea of guilty to the charges contained in the indictment and was sentenced to a lengthy term of imprisonment.
Before the defendant’s second trial began, he filed a motion to suppress the formal statement that he had given to the police after speaking with his brother, the informant. The motion alleged that the informant was working in concert with the police in an attempt to elicit a confession from the defendant and that such acts were in violation of his Fifth and Fourteenth Amendment right against self-incrimination and right to counsel. At the hearing on this matter, the State conceded that the manner used to obtain the defendant’s confession was improper, and the trial court granted the motion to suppress.
Shortly thereafter, the defendant filed another motion to suppress certain statements. The motion alleged that the statements that the defendant had made to Tapia that were overheard by the detective, and that the statements that the defendant had made directly to the detective while he was being transported to processing were obtained in violation of his Fifth and Fourteenth Amendment right to counsel. The trial court denied the defendant’s motion. The trial proceeded, and the defendant was found guilty as charged. This appeal follows.
The defendant raises several points on appeal. We find that only two merit discussion. First, the defendant contends that the trial court erred by denying his second motion to suppress. We disagree.
In order to properly address this issue, we must first examine the law that controls the denial of the first motion to suppress. In Jones v. State, 497 So.2d 1268 (Fla. 3d DCA 1986), review denied, 506 So.2d 1043 (Fla.), cert. denied, 484 U.S. 823, 108 S.Ct. 87, 98 L.Ed.2d 48 (1987), this court reviewed the principles enunciated by the Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny, Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The Jones court explained as follows:
[T]he prohibition against compelled self-incrimination requires police to advise ar-restees of their rights to remain silent and to obtain or be furnished counsel.... [W]hen an accused indicates that he wishes to consult with counsel, interrogation must cease until an attorney is present.
... Recognizing that a defendant may choose to waive his rights and respond to *54 police interrogation, the [.Edwards ] Court established safeguards to insure that post-Miranda waivers are voluntary. The [Edwards ] Court provided that the state may not prove a waiver merely by introducing a defendant’s response to police-initiated interrogation; instead, the state must demonstrate that the defendant abandoned an earlier request for counsel and resumed or initiated communication with police of his own volition.
Jones, 497 So.2d at 1270 (citations omitted). The Jones court continued:
Miranda procedural safeguards apply to custodial interrogation whether it appears as direct questioning or in the form of its functional equivalent. The term “interrogation” under Miranda “refers not only to express questions, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect.”
Jones, 497 So.2d at 1270 (quoting Innis, 446 U.S. at 301, 100 S.Ct. at 1689-90) (citations omitted) (omission in original).
In the instant case, when the defendant invoked his right to counsel, interrogation should have ceased until an attorney was present. Miranda, 384 U.S. at 474, 86 S.Ct. at 1627-28; Jones, 497 So.2d at 1270. However, as the State conceded below and the trial court found, interrogation did not cease; rather, the police sent their agent, a police informant who was also the defendant’s brother, to speak with him. As a result of this custodial interrogation by a police agent, the defendant gave a formal statement in violation of his Fifth and Fourteenth Amendment right to counsel, and the trial court properly granted the defendant’s motion to suppress the formal statement.
Next, we address the issue raised by this appeal, the denial of the defendant’s second motion to suppress. The defendant contends that the incriminating statements that he made to Tapia that were overheard by the detective and those that he later made to the detective on his way to being processed should have also been excluded because they were the product of police custodial interrogation in violation of his right to counsel. Innis, 446 U.S. at 300-01, 100 S.Ct. at 1689-90. Relying on Innis, the defendant argues that although he was not subjected to express questioning, he was subjected to its functional equivalent because the detective knew that seeing Tapia would likely produce an incriminating response on his part. In-nis, 446 U.S. at 300-01,100 S.Ct. at 1689-90. We disagree.
In Innis, the defendant, who was arrested in connection with the robbery of a taxicab driver, was read his Miranda rights, and he asserted his right to counsel. Innis, 446 U.S. at 294,100 S.Ct. at 1686. Interrogation ceased, but while he was being transported to the police station, two officers engaged in a conversation between themselves regarding the missing shotgun that was used in the robbery. Innis, 446 U.S. at 294,100 S.Ct. at 1686. One stated that there was a school for handicapped children nearby, and the other responded that they would continue to search for the shotgun because it would be too bad if a little girl found the shotgun and killed herself. Innis, 446 U.S. at 294-95, 100 S.Ct. at 1686-87. The defendant interrupted the conversation between the officers and instructed them to turn around so that he could show them where the shotgun was buried. Innis, 446 U.S. at 295, 100 S.Ct. at 1686-87. On appeal, the Rhode Island Supreme Court held that the defendant had been subjected to “subtle compulsion” that was the equivalent of interrogation within the meaning of the Miranda opinion and granted him a new trial. Innis, 446 U.S. at 303, 100 S.Ct. at 1690-91. On certiorari review, the United States Supreme Court reversed and explained that “the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent_ [T]he term ‘interrogation’ under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.” Innis, 446 U.S. at 300-01, 100 S.Ct. at 1689-90. The Court applied this two-pronged test and found that there was no express questioning and that the *55 conversation between the two officers was nothing more than a dialogue to which no response from the defendant was invited. Innis, 446 U.S. at 302, 100 S.Ct. at 1690. The Court explained that there was nothing in the record to suggest that the defendant was particularly susceptible to an appeal concerning the safety of handicapped children or that the police knew that the defendant was unusually disoriented or upset at the time of arrest. Innis, 446 U.S. at 802-03, 100 S.Ct. at 1690-91. Therefore, the Court concluded that the defendant was not subjected to the “functional equivalent” of questioning and that the defendant was not “interrogated” within the meaning of Miranda. Innis, 446 U.S. at 302-03,100 S.Ct. at 1690-91. Clearly, the case before us is factually distinguishable from Innis.
However, the facts in this case more closely resemble those in Arizona v. Mauro, 481 U.S. 520, 107 S.Ct. 1931, 95 L.Ed.2d 458 (1987). In Mauro, the United States Supreme Court held that a defendant, who had asserted his right to counsel, was not subjected to interrogation or its functional equivalent when the police allowed the defendant’s wife, at her insistence, to speak with the defendant in the presence of an officer who tape-recorded their conversation. The Court reasoned that there was no evidence to support the contention that the officers sent the wife to see the defendant for the purpose of eliciting incriminating statements. Mauro, 481 U.S. at 528, 107 S.Ct. at 1936; see also, Lowe v. State, 650 So.2d 969 (Fla.1994), cert. denied, — U.S. —, 116 S.Ct. 230, 133 L.Ed.2d 159 (1995) (Police did not interrogate defendant, who had asserted his right to counsel, by allowing his girlfriend to speak with him at her request, even though the police knew that there was a good possibility that she was going to try to get him to admit his involvement in a murder.) In Mauro, the Court concluded that although there was a possibility that the defendant would incriminate himself while talking to his wife, the police actions in this case were far less questionable than the “subtle compulsion” that the Innis Court held was not the equivalent of interrogation within the meaning of the Miranda opinion. Mauro, 481 U.S. at' 528-29,107 S.Ct. at 1936-37. Further, the Court noted that there were a number of legitimate reasons relating to safety and security that required a police officer presence during the meeting. Mauro, 481 U.S. at 523-24, 529, 107 S.Ct. at 1933-34, 1936-37. Lastly, the Court found that the defendant was not subjected to compelling influences, psychological ploys, or direct questioning and thus, that his volunteered statements could not properly be considered the result of police interrogation. Mauro, 481 U.S. at 529,107 S.Ct. at 1936-37.
We find that the instant case is similar to both Mauro and Lowe. Here, the defendant clearly initiated both of the conversations of which he complains. First, the defendant asked to see his partner, Tapia. This request was not at the suggestion of the detective; this was solely the defendant’s idea. Although the police may have known that there was a possibility that the defendant would incriminate himself when he spoke with Tapia, it was the defendant who requested to see Tapia and any police action was minimal as it was in Mauro and Lowe. Therefore, we hold that there was no interrogation within the meaning of Miranda and that, as to these comments, the trial court properly denied the defendant’s motion to suppress.
Next, we address the incriminating statements that the defendant made directly to the detective on the way to being processed. In Oregon v. Bradshaw, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), the United States Supreme Court examined its prior holding in Edwards that “after the right to counsel had been asserted by an accused, further interrogation of the accused should not take place ‘unless the accused himself initiates further communication, exchanges, or conversations with the police.’ ” Bradshaw, 462 U.S. at 1044, 103 S.Ct. at 2834 (quoting Edwards, 451 U.S. at 485, 101 S.Ct. at 1885). The Court explained as follows:
[Tjhere are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to “initiate” any conversation or dialogue. There are some inquiries, such as a request for a drink of water or a request to use a tele *56 phone that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation.
Bradshaw, 462 U.S. at 1045, 103 S.Ct. at 2835.
In the instant case, as in Bradshaw, the defendant’s request for assurances, that if he cooperated, the detective would help him out and that the police would go after the “main guys,” evinces a willingness and a desire for a generalized discussion about the investigation. The defendant’s questions were not merely necessary inquiries arising out of the custodial relationship. Based on the totality of the circumstances, we find that the incriminating statements made to the detective were voluntary and the result of a knowing waiver of his right to counsel. Accordingly, we find that the trial court properly denied all aspects of the defendant’s second motion to suppress.
Lastly, the defendant contends that the trial court erred by failing to exclude the fact that the co-defendant confessed his guilt. We disagree.
This court in Wetz v. State, 561 So.2d 1190, 1192 (Fla. 3d DCA 1990) held that the admission of a co-defendant’s statements against a defendant is proper if the co-defendant has pled guilty because the co-defendant no longer has a Fifth Amendment privilege against self-incrimination to invoke. Because the co-defendant has no Fifth Amendment privilege to invoke, he is available to be called as a witness and cross-examined, and there is no violation of the defendant’s Sixth Amendment right to confrontation. Wetz, 561 So.2d at 1191. Here, as in Wetz, Tapia, the co-defendant, had already pled guilty and had no Fifth Amendment privilege to invoke. Additionally, there was no violation of the defendant’s right to confrontation because the defendant could have called Tapia as a hostile witness and cross-examined him. Therefore, we find that, not only did the trial court properly allow the introduction of the fact that Tapia had confessed his guilt, but had the State attempted to introduce Tapia’s actual confession, its admission, perhaps properly redacted, might have also been proper.
Affirmed.

. The formal statement was the subject of the first motion to suppress.

. The defendant's statements to Tapia and the detective after he gave his formal statement were the subject of the second motion to suppress.