COPE, Judge.
Freddy Montoya-Navia appeals his conviction for drug trafficking. We reverse.
Prior to trial, defendant moved to perpetuate the testimony of two out-of-country witnesses. See Fla. R.Crim. P. 3.190(j). Telephone depositions had already been taken of the two witnesses. Whether to grant a motion to perpetuate testimony is within the sound discretion of the court, and such a motion may be granted if the court is satisfied that the perpetuation of testimony may prevent a failure or delay of justice. Fla. R. Civ. P. 1.290; 19 Fla. Jur.2d Discovery and Depositions § 125 (1980); 23 Am.Jur.2d Depositions and Discovery § 125 (1983). The deposition testimony supported defendant’s defense (which he testified to at trial) that he was acting under duress when he smuggled the drugs at issue in this case. The proffered testimony satisfied the legal standard and the motion to perpetuate testimony should have been granted.
Defendant next argues that the trial court erroneously admitted into evidence certain statements made by the defendant while in custody. We disagree and find the statements were properly admitted.
Defendant was taken into custody at Miami International Airport where United States Customs agents concluded that defendant had swallowed packages containing drugs and was attempting to gain entry into the United States. He was given Miranda[1] warnings but refused to waive his Miranda *1146 rights and made no statements at that time. The agents treated defendant as having invoked his right to remain silent and conducted no further interrogation.
Defendant was taken to the hospital and x-rayed. He made several spontaneous statements, the admissibility of which is not challenged here. At several points at the hospital defendant stated, “I am Freddy Montoya-Navia and I have no drugs.” When the x-ray revealed that the defendant had containers of drugs in his intestinal tract, Agent McNamara
told him that the x-ray was, in fact, positive, and that he would not be going anywhere.
[[Image here]]
I asked Mr. Montoya to please be seated, that the hospital would proceed with administering him a laxative, which is I believe a brand name, “Go Lite” which helps or speeds up the process of which the packets can be removed, speeding up nature.
Defendant repeated, “My name is Freddy Montoya-Navia. I have nothing[J”
Defendant contends that a subsequent discussion between himself and Agent McNamara should have been excluded from evidence. At least a half hour after defendant was given his x-ray results, defendant initiated a conversation with Agent McNamara. The agent testified:
Mr. Montoya approached me stating that he wanted to work out some kind of deal.
[[Image here]]
He stated that he could help us out. He stated that he would like to go to a plane side with us. Basically our function is to go to a plane and we pick people out of an airplane and select them for inspection. That, he would be willing to go plane side with us and point out other swallowers. That’s the way he said it.
[[Image here]]
I asked him if he wanted to cooperate, and he stated, “yeah, definitely.”
And I asked him how many pellets he had swallowed.
[[Image here]]
He stated that his name is Freddy Montoya and he doesn’t have any drugs. And I asked him why does he want to deal if he doesn’t have anything. He just went and sat down.
[[Image here]]
He said that, no, no, he really wanted to help us. He had a lot of knowledge and he could point out other swallowers. I told him his opportunity to talk with D.E.A. agents will come when he exits the hospital.
Defendant claims that this exchange took place immediately after defendant was told of his x-ray results. Defendant says that informing him of the x-ray results constituted impermissible interrogation after he had invoked his right to be silent. According to defendant, telling him of the x-ray results was calculated to stimulate him into making incriminating statements. This argument has no merit. First, the agents certainly could and should tell defendant of his x-ray results. The record shows that they did this, and had to do this, preparatory to advising defendant that he was not free to leave and that he would be given a laxative. Second, the record contradicts defendant’s claim that he offered to make a deal immediately after being confronted with his x-ray results. The record is very clear that at least a half hour elapsed before defendant initiated the conversation with Agent McNamara and offered to make a deal. The conversation clearly was not the product of any interrogation by the agents. Consequently, this testimony was properly admitted at trial. See Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); Jones v. State, 497 So.2d 1268 (Fla. 3d DCA 1986).
Defendant next contends that the state impermissibly commented on the defendant’s silence. We agree.
As already stated, when defendant was taken into custody at the airport he was advised of his Miranda rights. He initialed each paragraph of the Spanish-language Miranda warning form, but refused to execute *1147 the waiver of Miranda rights set out at the bottom of the form. The customs agents wrote “refused to sign” at the bottom of the form.
In opening statement, the state explained to the jury over defendant’s objection that after the defendant was advised of his Miranda rights, he refused to sign a waiver. Later, over defense objection, the state introduced the Spanish-language.Miranda form, which included the notation at the bottom of the form, “refused to sign.” The defendant’s objections were well taken and should have been sustained.
It is improper to comment on a defendant’s invocation of his right to remain silent. State v. DiGuilio, 491 So.2d 1129, 1131 (Fla.1986). The state’s remark in opening argument, and the introduction of the portion of the Miranda warning form saying “refused to sign” were, under the circumstances, “fairly susceptible of being interpreted by the jury as a comment on silence.” DiGuilio, 491 So.2d at 1131 (citation omitted).
Defendant next contends that the trial court erred by admitting certain testimony over defense objection in the state’s rebuttal case. The defendant claimed that he was acting under duress in smuggling the drugs, because his son had been kidnapped and defendant was required to deliver the drugs in order that no harm would come to his son. In its rebuttal case, the state called three of the agents to the stand. From each agent the state elicited the amount of time the agent had spent with the defendant (in each case, a number of hours). The state then asked whether at any time the defendant had mentioned that he had been kidnapped, or that his son had been kidnapped. The defendant objected that these were impermissible comments on the defendant’s exercise of his right to remain silent.
On the questions as phrased, we must agree with the defendant. The defendant had invoked his right to silence. Agents Ryan and Gallagher were with the defendant during time periods which included the invocation of silence. The only volunteered comments heard by these agents were defendant’s assertions on several occasions that “I am Freddy Montoya-Navia and I have nothing.” They were not privy to the defendant’s conversation with Agent McNamara about the offer to make a deal.
The defense objections to these questions should have been sustained. ‘“The prosecution is not permitted to comment upon a defendant’s failure to offer an exculpatory statement prior to trial, since this would amount to a comment upon the defendant’s right to remain silent.’ ” State v. Smith, 573 So.2d 306, 317 (Fla.1990) (citation omitted).
The state also called Agent McNamara as a rebuttal witness and asked him the same questions. For the reasons already stated, the defense objections should have been sustained because as phrased, the questions asked Agent McNamara to testify about whether the defendant had made any statements about kidnapping at any time, including the time periods during which the defendant had invoked his right to remain silent.
In our view, however, the state on retrial would be permitted to make a narrower inquiry of Agent McNamara. After defendant received his Miranda warnings and refused to waive his Miranda rights, there came a time when defendant initiated a conversation with Agent McNamara about making a deal. In that conversation defendant in substance offered to go to the airport with the agents and help point out other “swallowers.” He indicated that he wanted to cooperate with the agents. After some conversation in this vein, Agent McNamara told defendant that he would be given an opportunity to talk with the federal Drug Enforcement Agency after he exited the hospital. We think the state is entitled to bring out the fact that in defendant’s proposal for a “deal,” there was no mention of any kidnapping or any imminent peril to his son— even though at trial defendant testified that his son was being held by kidnappers and was in grave danger. Despite his request to cooperate, that request never included any mention, much less any request for assistance or special precautions for the benefit of, his son. As stated in Minnis v. State, 505 So.2d 17 (Fla. 3d DCA 1987):
*1148 [T]he prosecuting attorney did not, as urged, comment on the defendant’s refusal to testify in this ease. He commented on the defendant’s oral statement to the arresting police officer, noting that the defendant did not assert an alibi in this statement. This is a perfectly permissible comment on the defendant’s statement to the police, and in no sense amounts to a comment on the defendant’s exercise of his right to remain silent.
Id. (citations omitted); see also Holmes v. State, 565 So.2d 824 (Fla. 4th DCA 1990); Kinnon v. State, 439 So.2d 958 (Fla. 3d DCA 1983); Chavers v. State, 380 So.2d 1180 (Fla. 5th DCA 1980).
The conviction is reversed and the case remanded for a new trial.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).