ORFINGER, J.
David J. Ferguson appeals his conviction for three counts of sexual battery on a child under twelve years of age. Ferguson argues that the trial court erred by denying the motion to suppress his post-arrest statement to law enforcement and by admitting certain evidence at trial. We agree in part, and reverse for a new trial.[1]
Ferguson moved to suppress his post-arrest statement given to Florida law enforcement officers in a Virginia jail. Ferguson claimed that the statement should be suppressed because the detectives did not comply with the requirements of Almeida v. State, 737 So.2d 520 (Fla.1999).
Ferguson was arrested in Virginia based on a Florida arrest warrant. He was placed in a holding cell, and was informed, apparently by a Virginia jail officer, that there were “two ladies that come up from Florida” to talk with him. Thereafter, two detectives with the Orange County Sheriffs Office arrived for the purpose of questioning Ferguson concerning the allegations leveled by his now-adult daughters. As soon as the detectives introduced themselves, Ferguson inquired, “[i]s this the time I’m supposed to have a lawyer, of course, I’m not in Florida?” Rather than answer that question directly, the detectives spent the next several minutes trying to put Ferguson at ease and thus more susceptible to questioning. They then read Ferguson his Miranda rights and proceeded to question him for the next hour and a half during which he made incriminating statements.
A trial court’s ruling on a motion to suppress is presumptively correct and will be upheld if supported by the record. E.g., Cuervo v. State, 967 So.2d 155, 160 (Fla.2007); San Martin v. State, 717 So.2d 462, 469 (Fla.1998). We defer to the trial court findings of fact, provided they are supported by competent, substantial evidence, but review its application of law de novo. Delhall v. State, 95 So.3d 134, 150 (Fla.2012); Pagan v. State, 830 So.2d 792, 806 (Fla.2002).
A suspect has the right to consult with an attorney and to have an attorney present during custodial questioning. Spivey v. State, 45 So.3d 51, 54 (Fla. 1st DCA 2010) (citing Miranda v. Arizona, 384 U.S. 436, 469-73, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). “If a suspect clearly and unequivocally requests counsel at any time during a custodial interview, the interrogation must immediately stop until a lawyer is present or the suspect reinitiates conversation.” Id. (explaining that suspect must articulate desire to cut off questioning with sufficient clarity that reasonable police officer in circumstances would understand statement to be assertion of right to remain silent). On the other hand, if a suspect makes an equivocal or ambiguous request for counsel, police officers are not required to stop the interrogation or ask clarifying questions. Id. (holding that appellant’s statement, “I mean if I am being held and I’m being charged with something I need to be on the phone calling my lawyer,” was not an unequivocal request for counsel because it “did not clearly indicate that [he] wanted counsel present at that time or that he would not answer any further questions without counsel”); see also Walker v. State, 957 So.2d 560, 571, 574 (Fla.2007) (finding that appellant did not make unequivocal request for counsel where he said, “I think I might want to talk to an attorney” and later asked agent if he needed attorney); Jones v. State, 748 So.2d 1012, 1020 (Fla.1999) (finding that *109 appellant’s statement that he wanted to speak “to his mother, his attorney, and Detective Parker” was not unequivocal request for counsel). -
In Almeida, the Florida Supreme Court distinguished an equivocal statement that requires no clarification from a question that is “prefatory to — and possibly determinative of — the invoking of a right.” 737 So.2d at 523-24. The court held that
if, at any point during custodial interrogation, a suspect asks a clear question concerning his or her rights, the officer must stop the interview and make a good-faith effort to give a simple and straightforward answer. To do otherwise — i.e., to give an evasive- answer, or to skip over the question, or to override or “steamroll” the suspect — is to actively promote the very coercion that Traylor [v. State, 596 So.2d 957 (Fla.1992) ] was intended to dispel. A suspect who has been ignored or overridden concerning a right will be reluctant to exercise that right freely. Once the officer properly answers the question, the officer may then resume the interview (provided of course that the defendant in the meantime has not invoked his or her rights). Any statement obtained in violation of this proscription violates the Florida Constitution and cannot be used by the State. -
Id. at 525. Thus, a prefatory statement is subject to the following three-step analysis: (1) was the defendant referring to a constitutionally guaranteed right; (2) was the utterance a clear, bona fide question calling for an answer, not a rumination or a rhetorical question; and (3) did the officer make a good-faith effort to give a simple and straightforward answer. Id. at 523-25.
The supreme court clarified the duty of law enforcement officers when answering a suspect’s questions in State v. Glatzmayer, 789 So.2d 297, 305 (Fla.2001), explaining that
nothing in Almeida requires that law enforcement officers act as legal advis-ors or personal counselors for suspects. Such a task is properly left to defense counsel. To require officers to advise and counsel suspects would impinge on the officers’ sworn duty to prevent and detect crime and enforce the laws of the state. All that is required of interrogating officers under Almeida and [State v.] Owen [, 696 So.2d 715 (Fla.1997),] is that they be honest and fair when addressing a suspect’s constitutional rights....
(Footnotes omitted). .
In Glatzmayer, the suspect “asked the officers if ‘they thought he should get a lawyer?’ ” The officers responded that it was his decision. The court concluded that the response was a good-faith effort to give a simple and straightforward answer because “[tjheir response was simple, reasonable, and true,” explaining that, “[ujnlike the situation in Almeida, the officers did not engage in ‘gamesmanship’; they did not try ‘to give an evasive answer, or to skip over the question, or to override or ‘steamroll’ the suspect.’ ” Glatzmayer, 789 So.2d at 305 (quoting Almeida, 737 So.2d at 525); cf. Chaney v. State, 903 So.2d 951, 951-52 (Fla. 3d DCA 2005) (rejecting appellant’s arguments that detective failed to make good-faith effort to give simple and straightforward answer, was evasive, and intended to steamroll him where appellant asked detective if he thought appellant needed lawyer and detective responded, “Do you think you need a lawyer?,” because detective’s “question in effect correctly informed [appellant] that it was up to [him] to decide whether or not he needed a lawyer”).
*110 Here, the trial court correctly found that Ferguson made an unequivocal inquiry about his right to counsel which the detectives clearly understood. Hence, the issue turns on the third step of the Almeida analysis: whether the detectives gave a prompt, good-faith answer to Fer-guspn’s post-arrest question, “[i]s this the time I’m supposed to have a lawyer, of course, I’m not in Florida?” We conclude that the detective’s response of “Oh, um, I’ll kind of go over everything with you, okay,” did not comply with Almeida’s mandates. The response was not an immediate, simple, and straightforward response that communicated to Ferguson that he had the right to counsel and whether to request counsel was his choice. In fact, the detective never directly answered Ferguson’s question, but, instead, several minutes later, advised him of his Miranda rights. In the intervening period, the detectives attempted to build rapport with Ferguson by telling him how highly his family spoke of him and by minimizing his alleged criminal conduct.[2] The motion to suppress should have been granted.
Because this case is remanded for a new trial, one other issue merits discussion; . Ferguson’s ex-brother-in-law, Bryan Potts, testified on the State’s behalf, which included the following exchange:
[THE STATE]: Now during these family get-togethers five or six times a year, did you have a chance to observe the Defendant and M.V. communicating together, interacting together?
A Yes.
Q And what was your observation?
A Always seemed very odd. We always thought that there was something off—
[DEFENSE COUNSEL]: Objection, as to — -
THE COURT: Sustained.
Then, without objection, the following occurred:
BY [THE STATE]:
Q What did you personally think?
A I always thought he was an odd character.
Q Could you elaborate further?
A I always thought he was a child molester, I had that opinion, but I didn’t have any proof or facts, but there wasn’t much I could do about it.
Q Did you tell anyone that this was the case?
A I talked about it with my parents or brothers.
Q Why didn’t you report it to the police?
A Because I had no proof.
Q What about Mr. Ferguson made you think that he was a pedophile?
A He was just very odd. It’s hard to put into words, how he acted, things he said. It was a long time ago. I remember always feeling that way about him, and he seemed very controlling of his daughters.
(Emphasis added).
Ferguson contends that the court should not have allowed Potts to testify because he had no relevant testimony. We agree that Potts presented inad *111 missible opinion testimony, which likely improperly prejudiced the jury. We further agree, that the State’s follow-up question, “What about Mr. Ferguson made you think, that he was a pedophile?”, was highly improper, and would have been grounds for a mistrial, had such a motion been made. However, Ferguson made no objection to Potts’s improper opinion testimony or to the State’s highly improper follow-up question. As a result, this issue was not preserved for appellate review. Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982). Ferguson’s only recourse would have been to argue that the admission of the 'testimony constituted fundamental error. However, Ferguson did not preserve any claim of fundamental error because the issue was only presented in his reply brief. E.g., Wheeler v. State, 87 So.3d 5, 6 (Fla. 5th DCA 2012) (determining that appellate court was not required to undertake fundamental error analysis where defendant did not raise claim of fundamental error in initial appellate brief). We trust this irrelevant and highly prejudicial testimony will not be repeated on remand.
Because Ferguson’s pretrial statement to detectives should have been suppressed, we reverse his convictions and remand for a new trial.
REVERSED and REMANDED.
COHEN and EDWARDS, JJ., concur.

. We affirm without discussion the trial court's decision to admit a letter Ferguson wrote to the victim and a controlled telephone call that he made to her.

. One of the interviewing detectives testified that she was trained to utilize "interview techniques” for defendant interviews that include an attempt to build rapport with the witness and make the individual feel "comfortable” with the detective. ' Additionally, the detective is trained to utilize "minimization tactics” in which the detective attempts to minimize the acts that the defendant has been accused of and to deal with smaller pieces of what happened. These are routine law enforcement techniques and are acceptable provided that the mandates of Almeida are followed.