IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

ROBERT RACHON BROOKS,

        Appellant,

v.                           Case No. 5D23-11
                               LT Case No. 16-2018-CF-8376-AXXX-MA

STATE OF FLORIDA,

        Appellee.
_____/

Opinion filed June 16, 2023

Appeal from the Circuit Court
for Duval County,
Meredith Charbula, Judge.

Jessica J. Yeary, Public Defender, and
Justin F. Karpf, Assistant Public Defender,
Tallahassee, for Appellant.

Ashley Moody, Attorney General, and
Virginia Chester Harris, Assistant Attorney
General, Tallahassee, for Appellee.

JAY, J.

      A jury found Appellant guilty of shooting deadly missiles, possession

of a firearm by a convicted felon, and three counts of attempted second-

degree murder. We affirm Appellant's convictions and sentences in all

respects, and write only to address his claim that the trial court erred when it denied his motion to suppress statements from his post-arrest interview with police.

I.

On July 31, 2018, Appellant fired multiple shots at an occupied vehicle. The next day, officers obtained a warrant for his arrest. A uniformed SWAT officer from the Jacksonville Sheriff's Office ("JSO") executed the warrant two weeks later. The SWAT officer informed Appellant that he was under arrest pursuant to a warrant, but the officer did not identify the nature of Appellant's alleged crimes.

After the arrest, two JSO detectives interviewed Appellant at the police station. At the outset of the interview, Appellant asked whether he was being arrested. One of the detectives responded that it "remains to be seen." The detectives then advised Appellant of his *Miranda*[1] rights. Appellant verbally acknowledged his understanding of each right and signed the *Miranda* form.

Later in the interview, Appellant asked if he was allowed to have a lawyer present. The detectives answered affirmatively and indicated that the interview would end if Appellant requested counsel. They told Appellant that "there is a warrant for your arrest," and they would not get to hear his side of

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

the story if the interview ended. Appellant asked why he was being arrested. One of the detectives answered that he would tell Appellant before they were finished.

Appellant resumed talking with the detectives. They twice interrupted him to confirm that he wished to continue without a lawyer present. Appellant answered affirmatively. While Appellant admitted to being in the area in question, he never confessed to the shooting or even to hearing the gunshots. Ultimately, the detectives told Appellant why he was under arrest.

Appellant moved to suppress the statements he made in his interview. He claimed that the detectives failed to honor his right to counsel and that the arresting SWAT officer failed to comply with section 901.16, Florida Statutes (2018). Subject to certain exceptions, that statute directs officers to inform arrestees of "the cause of arrest" when executing a warrant.

The trial court held a two-part evidentiary hearing. Afterwards, the court entered a detailed order rejecting both of Appellant's suppression arguments. The court found that the arresting officer substantially complied with section 901.16 and that Appellant never unequivocally invoked his right to counsel. In this appeal, Appellant argues that the court erred in both respects.

II.

"A motion to suppress presents mixed questions of law and fact." *Evans v. State*, 989 So. 2d 1219, 1221 (Fla. 5th DCA 2008). "In considering rulings on a motion to suppress, 'an appellate court reviews legal conclusions using a *de novo* standard, but generally defers to the factual findings of a trial court.'" *State v. Trinidad*, 351 So. 3d 109, 112 (Fla. 5th DCA 2022) (quoting *Ferryman v. State*, 919 So. 2d 710, 712 (Fla. 5th DCA 2006)).

A.

First, Appellant argues that the trial court should have granted his suppression motion based on section 901.16. That statute provides:

> A peace officer making an arrest by a warrant shall inform the person to be arrested of the cause of arrest and that a warrant has been issued, except when the person flees or forcibly resists before the officer has an opportunity to inform the person, or when giving the information will imperil the arrest. The officer need not have the warrant in his or her possession at the time of arrest but on request of the person arrested shall show it to the person as soon as practicable.

§ 901.16, Fla. Stat. (2018).

The Florida Supreme Court has held that section 901.16 is subject to a substantial compliance analysis because the statute does not have "a constitutional dimension." *See Johnson v. State*, 660 So. 2d 648, 659 (Fla. 1995) ("Arrest statutes such as [sections 901.16 and 901.17] are subject to

4

a substantial compliance analysis because they direct ministerial acts not of a constitutional dimension." (internal citations omitted)); *cf. Perkins v. State*, 576 So. 2d 1310, 1312 (Fla. 1991) (noting that *penal* statutes "must be strictly construed according to their letter" because due process demands that criminal statutes precisely identify prohibited conduct). Under certain circumstances, an officer substantially complies with section 901.16 when he informs the arrestee about the existence of the arrest warrant, even if he fails to identify the charged offense at the time of the arrest. *See Conti v. State*, 540 So. 2d 934, 935–36 (Fla. 1st DCA 1989)[2] (holding that a substantial compliance standard applies to section 901.16 and affirming the denial of a motion to suppress that was based in part on section 901.16 in a case where the officer informed the appellant that there was an outstanding warrant for his arrest, but that he did not know the specific cause for the warrant); *see also City of Miami v. Nelson*, 186 So. 2d 535, 537 n.1 (Fla. 3d DCA 1966) ("Furthermore, while [section 901.17] requires that an officer effecting an arrest without a warrant inform the person to be arrested of his authority and the cause of the arrest, the fact that the person to be arrested is not informed of the cause of the arrest until subsequent thereto does not

---

[2] The Florida Supreme Court favorably cited *Conti* in *Johnson*. *See Johnson*, 660 So. 2d at 659.

5

necessarily deprive him of his rights."). That is precisely what happened in this case when the arresting officer advised Appellant of the warrant, and Appellant fails to otherwise demonstrate on appeal that the arresting officer violated the statute.[3] Accordingly, the trial court correctly found that the arresting officer substantially complied with the statute.

Even if Appellant could show a violation of the statute, he does not identify any authority that provides him with the remedy he seeks—that is, the suppression of his statements. The plain text of the statute includes no such remedy. *See* § 901.16, Fla. Stat.; *see, e.g.*, *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946–47 (Fla. 2020) (reiterating that the "words of a governing text are of paramount concern" and that unless context suggests otherwise, courts read statutes according to their plain, obvious, and common-sense meaning (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012))); *see also Lab'y*

---

[3] The arresting officer testified that he did not notify Appellant of the specific charge because his unit generally relies on the investigating officers to do so. Appellant does not argue on appeal that the arresting officer's proffered reason is itself illegitimate or otherwise establishes error. We therefore do not consider this issue. *See Simmons v. State*, 934 So. 2d 1100, 1117 n.14 (Fla. 2006) ("[A]ny arguments not expressly included in Simmons' brief to this Court are not considered in this appeal."); *Davis v. State*, 153 So. 3d 399, 401 (Fla. 1st DCA 2014) ("[T]he burden rests on the appellant to demonstrate reversible error.").

*Corp. of Am. v. Davis*, 339 So. 3d 318, 323 (Fla. 2022) ("In interpreting a statute, our task is to give effect to the words that the legislature has employed in the statutory text.").

Moreover, the absence of suppression as a remedy in section 901.16 is conspicuous because the Legislature has expressly included that remedy in other criminal procedure statutes. For example, the stop and frisk statute, which immediately precedes section 901.16, provides that no evidence obtained in violation of the statute is admissible in any Florida court. *See* § 901.151(6), Fla. Stat. Such is also true of the statutes governing drone searches and intercepted wire or oral communications. *See* §§ 934.50(6), .06, Fla. Stat. By not including a similar provision in section 901.16, the Legislature has spoken "loudly and clearly." *See In re Guillen*, 972 F.3d 1221, 1226 (11th Cir. 2020) (quoting *Myers v. TooJay's Mgmt. Corp.*, 640 F.3d 1278, 1285 (11th Cir. 2011)). And when a legislative body "knows how to say something but chooses not to, its silence is controlling." *Id.* (quoting *Myers*, 640 F.3d at 1285). "[I]t is our duty to respect . . . what [the Legislature] . . . didn't write." *Va. Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1900 (2019). Thus, adopting Appellant's suppression "argument would result not in a construction of the statute, but, in effect, an enlargement of it." *In re Guillen*, 972 F.3d at 1226 (citation and quotation omitted).

7

B.

Appellant also maintains the trial court should have granted suppression based on his *Miranda* claim—specifically, that the detectives used the threat of an arrest to coerce him into answering questions even though he invoked his right to counsel. Here again, we find no error.

Before starting their interview, detectives advised Appellant of all his *Miranda* rights. Appellant acknowledged his understanding of those rights verbally and in writing. He then began answering questions. He stopped during one of his answers to ask whether he could have a lawyer present.

On these facts, we see no basis for disturbing the trial court's finding that "[a]ny reasonable police officer, observing Mr. Brooks' demeanor and tone of voice," would view his inquiry "not as an unequivocal request for counsel, but instead as a genuine question" about what was allowed during the interview. *See, e.g.*, *Washington v. State*, 253 So. 3d 64, 71 (Fla. 1st DCA 2018) (affirming the denial of a motion to suppress in a case where the detectives "reasonably interpreted" the suspect's question, "Can I call my lawyer?" as an inquiry "about whether he *could* contact an attorney as opposed to expressing a desire to terminate the interview and speak with counsel at that precise moment").

In responding affirmatively to Appellant's inquiry, the detectives

8

reminded him that the right to counsel was among those rights they advised him of at the start of the interview. By clearly and accurately answering Appellant's question, the detectives fulfilled their obligation under the law. *See Almeida v. State*, 737 So. 2d 520, 525 (Fla. 1999) (holding that if a suspect asks a clear question during custodial interrogation about his constitutional rights, officers "must stop the interview and make a good-faith effort to give a simple and straightforward answer"); *see also State v. Glatzmayer*, 789 So. 2d 297, 305 (Fla. 2001) (clarifying that *Almeida* does not require officers to "act as legal advisors or personal counselors for suspects," but only to "be honest and fair when addressing a suspect's constitutional rights").

The detectives also notified Appellant that if he wanted a lawyer, they would stop the interview, which would prevent them from hearing his version of events. Again, the detectives conveyed accurate legal information. *See Ferguson v. State*, 200 So. 3d 106, 108 (Fla. 5th DCA 2015) (noting that under *Miranda*, officers must immediately stop interviewing a suspect if he requests counsel). Equipped with this information, Appellant resumed answering questions. He twice confirmed that he wished to talk to the detectives without a lawyer present:

9

[First Detective]: Okay. Hold on. Before we continue to talk --

[Second Detective]: Do you want to talk to us now?

[Appellant]: Yeah.

[Second Detective]: So you want to --

[First Detective]: You want to talk to us?

[Second Detective]: Without the lawyer?

[Appellant]: I'll talk to you, right.

. . . .

[First Detective]: Okay. I just want -- before we continue, I just want to [ask] you -- to make sure that you understand, we're not pressuring you, we're not trying to make you talk or anything else, because we can't force you to do anything you don't want to.

So you do want to talk to us?

[Appellant]: Well, yeah, I guess so.[4]

Having never made an unambiguous request for counsel, Appellant cannot prevail on his *Miranda* claim. *See Ferguson*, 200 So. 3d at 108 ("[I]f a suspect makes an equivocal or ambiguous request for counsel, police officers are not required to stop the interrogation or ask clarifying

_____

[4] The interview recording was played multiple times at the suppression hearing. Any *de minimis* differences reflected in the transcription of each playing is immaterial to our analysis.

10

questions."). Indeed, he twice verified his desire to continue the interview without a lawyer. Appellant's allegation that detectives used the threat of an arrest to coerce his interview participation is undermined by the fact that the SWAT officer had already told him he was under arrest pursuant to a warrant. Furthermore, while they initially told Appellant that it "remains to be seen" whether he would be arrested, the detectives ultimately told him "there is a warrant for your arrest" before he made the statements he later sought to suppress. And contrary to what Appellant suggests, the detectives were not obligated to disclose the reason for his arrest before continuing their interview. *See McKenzie v. State*, 125 So. 3d 906, 912 (Fla. 4th DCA 2013) (holding that "*Almeida* does not require the interrogating officer to answer a question relating to the substance of the interrogation"); *Barger v. State*, 923 So. 2d 597, 602 (Fla. 5th DCA 2006) ("[W]e find the trial court correctly held that the statement 'I want to know what I am being charged with' was not a prefatory question concerning Barger's constitutional rights. Therefore, the officers were not required to answer the question before continuing the interview."); *State v. Jones*, 763 So. 2d 1180, 1180 (Fla. 4th DCA 2000) ("The failure of law enforcement officials to inform a suspect in custody of the subject matter of the interrogation, i.e., what offenses he or she will be questioned about, does not affect the suspect's decision to waive the Fifth

11

Amendment privilege in any constitutionally significant manner.").

C.

Finally, even if Appellant could show that his suppression motion was meritorious, he cannot show that its denial was reversible error. "*Miranda* violations are subject to a harmless error analysis." *Deviney v. State*, 112 So. 3d 57, 79 (Fla. 2013). In a harmless error analysis, the "question is whether there is a reasonable possibility that the error affected the verdict." *State v. DiGuilio*, 491 So. 2d 1129, 1139 (Fla. 1986).

Here, given the remainder of the State's evidence, there is no reasonable possibility that if the court had suppressed Appellant's interview with detectives, the jury would have acquitted Appellant or found him guilty of lesser crimes. Appellant never confessed to the shooting—or even to hearing the gunshots. The most inculpatory admissions Appellant made were that he drove a silver car around Monaco Drive on July 31st and that he "flicked . . . off" his former girlfriend while in the area. Given the other evidence available to the State, we conclude there is no reasonable possibility that any error here affected the verdict. *See, e.g.*, *Davis v. State*, 153 So. 3d 360, 366 (Fla. 4th DCA 2014) ("In this case, the error in admitting Appellant's statements was harmless, as the improperly admitted statements were cumulative of other evidence presented at trial."); *McKenzie*, 125 So.

12

3d at 912 (holding that even if the trial court should have suppressed the appellant's interview statements due to a violation of his right to counsel, the error was harmless because the only fact that he conceded was being in the area around the time of the offense, which the State proved through the testimony of another witness).

Indeed, Appellant's statements in the interview were trivial compared to those he later made in recorded phone calls from the county jail. Simply put, this was not a case that depended on Appellant's post-arrest interview. *See Miles v. State*, 60 So. 3d 447, 454 (Fla. 1st DCA 2011) (Marstiller, J., concurring in part, dissenting in part) ("I have no trouble, under the circumstances of this case, concluding that the trial court's error in admitting Appellant's statements *denying* guilt did not contribute to the guilty verdicts.").

## III.

In sum, the trial court did not err when it denied Appellant's motion to suppress. And even if the court had erred in this regard, the error would not warrant a new trial because there is no reasonable possibility that the trial's result hinged on the outcome of Appellant's motion.

Finding no reversible error as to this issue or any of the others raised by Appellant, we affirm his convictions and sentences.

13

AFFIRMED.

EISNAUGLE and KILBANE, JJ., concur.